419 A.2d 620

Joseph W. BERENATO, Jr. and Paul W. Berenato and Joseph W. Berenato, Jr. and Dorothy H. Berenato, h/w and Paul W. Berenato and Marie L. Berenato, h/w

v.

BELL SAVINGS AND LOAN ASSOCIATION, Appellant.

Superior Court of Pennsylvania.

Argued June 28, 1979.

Filed April 11, 1980.

600

Samuel Rappaport, Philadelphia, for appellant.

William W. Spalding, Philadelphia, for appellees.

Before WIEAND, LOUIK and ROBINSON, JJ.*

* Judge DONALD E. WIEAND is sitting by special designation. President Judge OTTO P. ROBINSON of the Court of Common Pleas of

LOUIK, Judge:

This appeal involves the question of whether a mortgagee is entitled to retain a prepayment "penalty" or "premium" when the mortgage is paid off in advance as the result of a sale of the mortgaged property necessitated by the mortgagor's adverse business circumstances.

The agreement underlying the present case is a mortgage executed on October 17, 1973, between Berenato (mortgagor) and Bell (mortgagee). Included in the terms of the mortgage was a clause allowing Berenato to prepay the mortgage as follows:

> "MORTGAGOR may have the privilege of making payment on account of mortgage obligation as follows: DURING the first five years of the term of the mortgage, any prepayment will be subject to one year's interest on the unpaid balance. . . ." (R. 21a)

After making the regular installment payments until November 1, 1976, Berenato became in default on the loan. Bell entered a judgment by confession on the Bond and Warrant on April 12, 1977. Execution on the judgment was issued, and notice of sheriff sale was sent out. The pending sheriff sale was stayed upon payment of the arrears. This payment was arranged by First Pennsylvania Bank, a creditor of Berenato having a security interest in the heavy equipment installed on the premises by virtue of a loan made to Berenato. At this point Bell's records indicate that the mortgage account was returned to good standing. Further monthly payments on the mortgage account through First Pennsylvania kept it current and in good standing.

In the meantime, to protect its interest in the personally guaranteed loan with Berenato, First Pennsylvania sought a buyer for the property. With respect to these matters, Berenato contended that he had no control. In any event, on September 1, 1977, Berenato settled with a buyer arranged by First Pennsylvania, whereupon Bell submitted a

Lackawanna County, Pennsylvania, and Judge MAURICE LOUIK of the Court of Common Pleas of Allegheny County, Pennsylvania, are sitting by designation.

pay–off statement for the mortgage, including the sum of $10,746.27 for the prepayment premium. Berenato paid the premium amount under protest and subsequently sued for its return. Plaintiffs' Motion for Judgment on the pleadings was granted and defendant's Motion for Summary Judgment was denied.

The trial court ruled in favor of Berenato. The Court reasoned that because Bell had entered judgment on the Bond and Warrant, and proceeded through execution and notice of sheriff sale, so long as the execution of the judgment was still outstanding and unsatisfied, Berenato was in a situation where he was compelled to sell the property in order to satisfy his obligation to Bell. The trial court felt that these circumstances made the sale and subsequent prepayment of the mortgage "involuntary" within the rule of *Chestnut Corp. v. Bankers Bond and Mortgage Co.*, 395 Pa. 153, 149 A.2d 48 (1959), and therefore not subject to the penalty.

In *Chestnut Corp. v. Bankers Bond and Mortgage Co.*, the mortgaged premises were destroyed by fire. According to the terms of an insurance policy the mortgagee received payment in full of the unpaid balance of the mortgage. According to the Pennsylvania Supreme Court, the prepayment clause was inserted in the mortgage to give the mortgagor the privilege of prepaying while compensating the mortgagee for the expenses involved in making new long–term investments. Since the prepayment was not made by the voluntary election of the mortgagor, but rather was forced by the occurrence of the fire, the circumstances were not of the sort contemplated by the prepayment clause. Balancing the equities of the situation, the mortgagee having received the entire principal and interest of the mortgage, while the mortgagor was left only with the remaining proceeds of the insurance policy, the court indicated that the mortgagee was not entitled to the prepayment premium.

A similar result has been reached in other jurisdictions where the sale of the mortgaged property and prepayment of the mortgage was occasioned by some governmental

authority exercising or threatening to exercise its powers of eminent domain. In such cases the prepayment is not a voluntary election on the part of the owner, but a right to condemnation funds created by law.

Berenato's reliance on the eminent domain cases is wholly misplaced. The "grandfather" case among them, *Shavers v. Duval County*, 73 So.2d 684 (Fla.1954), denied a mortgagee interest for the full period of the mortgage where the mortgaged property was taken by eminent domain. The Supreme Court of Florida allowed interest only to the date of distribution of the condemnation funds. The court reasoned that the change in the contract accelerating the mortgage payments was brought about by operation of law, law which was in effect at the time of the creation of the contract, and therefore, presumptively within the contemplation of the parties. In the condemnation proceedings, the full amount of the unpaid principal was awarded to the mortgagee. Upon distribution of this amount, there remained no balance of principal on which the mortgagor was obligated to pay interest. To the same effect is *Associated Schools, Inc. v. Dade County*, 209 So.2d 489 (Fla.App. 1968).

These cases, along with *Chestnut Corp.*, supra, were cited by the Superior Court of New Jersey in *Jala Corp. v. Berkeley Savings and Loan*, 104 N.J.Super. 394, 250 A.2d 150 (1969), to establish the proposition that because the mortgagor's fee interest in and the mortgagee's lien on the premises were destroyed by the action of the state and transmuted by operation of law to a present right to the condemnation funds, the mortgagor had not exercised a right to prepay as contemplated by the clause in the mortgage. Echoing the equitable focus of the *Chestnut Corp.*, supra, opinion, the New Jersey court noted that if the mortgagee felt that he was entitled to this sum under these circumstances, he could have provided for this in the mortgage.

It would be inappropriate to extend the rule of the eminent domain cases to include the present circumstances. It may be that Berenato had no control over the sale, but First Pennsylvania Bank should not be put in the place of

the sovereign in this analogy. The mortgage was accelerated not by operation of law, but by business concerns. If this is the source of the duress which Berenato claims, it is clearly distinguishable from the forces which made the prepayments in *Jala, Associated Schools*, and the others "involuntary."

Neither should the reasoning of the Pennsylvania Supreme Court in *Chestnut Corp.* be extended to cover the facts in the case at bar. Sale of property to cover debts that were personally guaranteed is not the same reason for prepayment as destruction of the subject matter of the mortgage by fire. Berenato's adverse financial circumstances were not caused by Bell, nor was Berenato entirely without choice as to the means of resolving his business difficulties. While certainly making more desirable a sale which satisfied other debts as well, only in the most far-stretched way can this action be said to make such a sale involuntary.

Berenato also argues that there was duress arising out of the outstanding judgment which Bell had obtained on the Bond. He contends that Bell intentionally kept him ignorant of the cure of the default and the return to good standing of the mortgage while keeping the judgment in effect as a coercive tactic to eliminate his freedom of choice and force the sale of the property.

There is some authority for the proposition that where a mortgagee chooses to foreclose on a mortgage, thereby electing to treat the entire mortgage as due, and the mortgagor substantially changes his position in reliance on that action, as by securing a second loan to pay off the mortgage, the mortgagee is not entitled to revoke his acceleration of the mortgage and treat the early payment as one subject to a premium. *Kilpatrick v. Germania Life Insurance Co.*, 183 N.Y. 163, 75 N.E. 1124 (1905). However, a prepayment bonus was upheld in *West Portland Development Co. v. Ward Cook, Inc.*, 246 Or. 67, 424 P.2d 212 (1967), in which it was found that the mortgagor had not relied to his detriment before the mortgagee elected to rescind his notice of

default, and therefore was required to deliver the prepayment amount.

The present case more nearly parallels *West Portland Development*. Here the mortgage was returned to good standing and kept current by the monthly payments of First Pennsylvania. At the same time the sheriff's sale in execution of the confessed judgment was stayed. This clearly indicates that Bell intended to reinstate the mortgage and forego its remedy on the Bond judgment at least temporarily. Indeed it is apparent that this action was taken in reliance on the efforts of First Pennsylvania to obtain a buyer for the property. The distinguishing element in the *Kilpatrick* and *West Portland Development* cases is reliance. In the present case, it does not appear that Berenato changed his position to his detriment to pay off the mortgage in advance. By agreeing to the sale arranged by First Pennsylvania, Berenato was relieving himself of a number of obligations which might have remained outstanding had the property been disposed of by sheriff's sale.

Furthermore, Berenato's sale of the property was not made in reliance on Bell's election to treat the entire mortgage as due. This is clearly evidenced by the payments made on his behalf to return the mortgage to good standing and to keep it current. The sale was made for reasons related to his overall business circumstances. While the debt owing to Bell was undoubtedly a part of these circumstances which made it "necessary" for Berenato to sell, it cannot be said that Bell coerced the sale of the property. Indeed, Bell elected to forego a forced sale on the judgment in which it would have recovered on its debt, and allowed Berenato the opportunity to satisfy his debts not only to Bell on the mortgage, but to First Pennsylvania Bank, on the personal loans as well. Under these circumstances, Berenato should not be heard to complain of the terms of the agreement.

Order reversed.

This decision was reached following the death of ROBINSON, J.