248 N.J. Super. 19 (1990)
589 A.2d 1363
CLINTON CAPITAL CORPORATION, PLAINTIFF,
v.
EDWARD STRAEB, ET ALS., DEFENDANTS. (TWO CASES)
Superior Court of New Jersey, Chancery Division Passaic County.
Decided August 31, 1990.
*20 Peter R. Bray for plaintiff (Cole, Yamner & Bray, attorneys).
Robert J. Prier for defendants (Coral, Ortenberg, Mayer, Zack & Prier, attorneys).
DWYER, J.S.C.
Clinton Capital Corporation, a New York corporation, on April 7, 1989, filed a complaint in foreclosure against Edward Straeb and Edna Straeb, his wife; Anthony Belli and Rosemary Belli, his wife, and the American Insurance Company in the Superior Court of New Jersey, Chancery Division, Passaic County, Docket No. F-2791-89. This action was consolidated with Clinton Capital Corporation v. Edward Straeb, et al., a foreclosure action in Bergen County, Docket No. F-2905-89, by order dated December 6, 1989. The order further provided that *21 the parties agreed that the law of New York would govern, but jurisdiction to foreclose the mortgage is necessarily in the State of New Jersey.
The order made reference to the fact that Clinton Capital Corporation had instituted a foreclosure action entitled Clinton Capital Corporation v. Straeb and Belli, Inc., et al., in Rockland County, New York in which all the corporate borrowers were defendants.
Defendant, American Insurance Company was dismissed by plaintiff.
By order dated May 9, 1990, the answer set forth on behalf of Edward Straeb, Edna Straeb, Anthony Belli and Rosemary Belli was stricken and permission was granted to plaintiff to make application for the entry of a final judgment. A motion was made on notice to the attorney representing defendants, returnable on Friday, August 31, 1990, for the entry of the final judgment and fixing the amount due. The mortgages given by the named individuals on the properties located in Bergen County and Passaic County were given to secure their individual guarantees of the loan to Straeb, Schroen & Belli, Inc. The note of Straeb, Schroen & Belli, Inc. in the amount of $220,000, dated July 15, 1986, provided for 120 consecutive monthly installments of principal and interest and would become due on August 1, 1996 at which time the entire unpaid principal of the loan, together with accrued interest would be due and payable. The note contained the following provision relating to prepayment:
This Note may be prepaid in whole or in part at any time and from time to time, upon ten (10) days' prior written notice to the payee specifying the day and amount of such prepayment, provided that at the time of such prepayment the undersigned shall pay to the payee a prepayment penalty equal to ten (10%) percent of the principal amount so prepared (the "premium"). Partial prepayments shall be applied first to the payment of accrued interest, then to the payment of the premium and then against the remaining installments of principal in the inverse order of their maturity. The premium shall be paid whether prepayment is voluntary or involuntary, including any prepayment made after exercise of any acceleration provision contained in this Note or any documents or instrument executed in connection therewith.
*22 The mortgages which were executed by the individuals to secure their guarantees contained the following provisions:
7. The Lender may declare the entire unpaid amount of principal and interest under the Note and this Mortgage due immediately for any of the following causes: (a) the failure of the Company to make any payment of principal and interest under the Note after its due date. (b) the failure of the Borrower to keep any other promise under this Mortgage within ten (10) days after written notice from the Lender. (c) the failure of the Borrower to make any payment due or to keep any other promise under the Senior Mortgage. (d) any change in the ownership of all or any part of the Property. A change resulting from the death of the Borrower shall not be considered a change of ownership. The change of ownership of a majority of a corporate borrower's common shares, other than by death, is a change of ownership. (e) the starting of foreclosure proceedings by the holder of any other mortgage or lien on the Property. and (f) the starting of bankruptcy, receivership, or insolvency proceedings by or against the Borrower.
The Lender's failure to accelerate for any cause shall not prevent the Lender from doing so for a later cause.
8. If the Lender declares acceleration, the Lender has all rights given by law, for example: (a) to enter and take possession of the Property. (b) to ask a court to appoint a receiver of rents of the Property. The Borrower consents to the appointment of a receiver. (c) To start a court action for foreclosure. Foreclosure is a court ordered sale of the Property. The proceeds of the sale are used to pay the principal and interest due under the Note and Mortgage, plus costs. The Property may be sold in one or several parcels. The Lender may sue any tenant of the Property in the foreclosure action. The Lender's failure to do so does not reduce the Borrower's obligations under the Guarantees and Mortgage, (d) the sale of the Property on foreclosure may not bring in enough money to pay the entire amount due under the Note and Mortgage. The Lender may then sue the Borrower under the Guarantees for the difference. The Lender retains any rights given by law to sue under the Note and Guarantees before foreclosing under the Mortgage.
In a Rider attached to the mortgage there was the following provision relating to prepayment:
13. The Note may be prepaid in whole or in part at any time and from time to time, upon ten (10) days' prior written notice to the Lender specifying the date and amount of such prepayment, provided that at the time of such prepayment the Borrower shall pay to the Lender a prepayment penalty equal to ten (10%) per cent the principal amount so prepaid (the "Premium"). Partial prepayments shall be applied first to the payment of accrued interest, then to the payment of the Premium and then against the remaining installments of principal in the inverse order of their maturity. The Premium shall be paid whether prepayment is voluntary or involuntary, including any prepayment made after exercise of any acceleration provision contained in the Note or this mortgage or any documents or instruments executed in connection herewith, *23 and payment, if any is due, of such prepayment Premium shall be secured by this mortgage. Nothing herein contained shall be construed so as to entitle Borrower or Company to reborrow any amount prepaid.
In the complaint for foreclosure there is a provision in paragraph nine alleging that, on January 1, 1989, there was a default in making payment under the note and mortgage and that the same had remained unpaid for more than 30 days. It was further alleged that by reason of said default Clinton Capital Corporation "elected that the whole principal sum due on the aforesaid obligation with all unpaid interest, late charges, prepayment penalties and advances shall now be due and payable."
In the affidavit of the amount due filed by Mitchell Rothken, on behalf of Clinton Capital Corporation, in paragraph seven, he details the amounts claimed:

 Principal ........................ $194,828.77
 Interest to 8/17/90 .............. 52,786.40
 Insurance premiums advanced ...... 7,669.63
 Late charges ..................... 2,839.40
 Default interest ................. 55,388.52
 Pre-Payment Penalty .............. 19,482.88
 Return Check Fees ................ 40.00
 ___________
 Total as of 8/17/90 .......... $333,035.60

The corporate note provided for interest at the rate of 15%. It also provided that if any payment was unpaid for a period of five days a late charge equal to 4% for each installment shall be charged. It further provided, "interest on the indebtedness evidenced by this note after default or maturity accelerated or otherwise shall be due and payable at the rate of two percent per month subject to the limitation of applicable law." The court interprets the amount set forth as "default interest" to be computed based on the 2% per month formula.
The court interprets the prepayment penalty of $19,482.88 to be based upon the fact that there is an involuntary prepayment.
In the memorandum of law, submitted with the affidavit of the amount due, Bloomfield Savings Bank v. Howard Stainton *24 & Co., 60 N.J. Super. 524, 159 A.2d 443 (App.Div. 1960), is cited in support of the propriety of a prepayment provision in a mortgage.
In that case there was no prepayment provision in the mortgage. Defendant, Howard Stainton & Co., had taken the position that it had the right at any time to pay the entire principal and accrued interest on its bond without penalty for prepayment and tendered that amount to the Bloomfield Savings Bank (Bank). The Bank rejected the contention that Stainton could prepay at any time. Stainton then refused to pay any further monthly installments. The Bank then instituted a partial foreclosure under N.J.S.A. 2A:50-39 for the amounts that were then due.
The facts further revealed that when Stainton sought to pay off the mortgage, the Bank had demanded a "prepayment penalty" of $1,800, and insisted that without the payment of said sum it would not consent to the prepayment.
Stainton filed a counterclaim in the foreclosure action in which it tendered the principal amount, plus accrued interest, and urged that the Bank was trying to extract usury. The trial court entered a judgment of partial foreclosure for the unpaid installments and counsel fees. In affirming the trial court, the Appellate Division said in part:
It is merely the exercise of a right to demand a consideration for its acceptance of a request by defendants for prepayment for which no specific provision existed. For such requested action it had a separate contractual right to require the aforesaid payment "for surrendering the privilege of having its funds invested, and of collecting interest thereon for the term provided in the contract * * *." Annotation, 130 A.L.R. 73, 78-79(II(b)(2)).
We deem it significant, and in refutation of defendants' assertion that they had the absolute and unconditional right to pay the full amount of the bond at any time and secure the contemporaneous cancellation of the mortgage, that in each of the aforesaid bonds is a clause that "the Obligee may waive the requirements of the whole or any part of the Agreement contained in this paragraph." The paragraph to which reference is made is the one which specifies in detail the installment method of payment over the succeeding years. Implicit in the provision that the obligee might waive any of the said requirements is the fact that, in the absence of such waiver, the obligors were bound to adhere thereto. It is perfectly plain that both parties were bound by the *25 installment provisions of the bond. Plaintiff could not force earlier payment over defendants' resistance. Defendants could not compel plaintiff to accept payment other than as provided therein. If defendants desired for any reason to depart from the terms of the bond and pay the obligation before maturity they could do so only with the plaintiff's consent. Defendants' assertion that the plaintiff's demand is tantamount to usury is totally without justification. [Id. at 531-532, 159 A.2d 443.]
Subsequently, the Appellate Division, from the trial court's observation that "plaintiff instituted foreclosure proceedings for the delinquent payments only, not electing that the whole principal balance become due, and had now moved for summary judgment," held that the Bank had never demanded the whole amount of principal.
This court notes that, had the Bank elected to accelerate the mortgage, Stainton might then have elected that it had a right of redemption.
Counsel for Clinton Capital Corporation, at another point in the memorandum, suggests that the reference to an involuntary prepayment prevents a mortgagor from having a right of prepayment by defaulting and thus precipitating a foreclosure.
In Cox v. Kille, et al., 50 N.J. Eq. 176, 24 A. 1032 (Ch. 1892), the court held that a person responsible for the payment on a mortgage which contained a provision of an automatic acceleration clause by defaulting could not convert the acceleration clause into one giving him an option to prepay. The court said: "Authorities need not be cited in support of the general doctrine that equity will not permit a party to take advantage of his own wrong." Id. at 177, 24 A. 1032. See Keene Five Cent Savings Bank v. Reid, 123 F. 221 (8 Cir.1903). See Annotation, "___," 159 A.L.R. 1085.
The other cases cited in the memorandum are correct statements of the law on the facts presented in those cases. The court agrees with the statement on page 3 of the memorandum where reference is made to Weinstein v. Investors Savings & Loan Association, 154 N.J. Super. 164, 381 A.2d 53 (App.Div. 1977), which held that, prior to the enactment of the law found *26 in N.J.S.A. 46:10B-1, the mortgagor had no absolute right to prepay a mortgage. The presence of a prepayment penalty or an involuntary prepayment penalty raises questions not addressed in the memorandum: namely, the clogging of equity of redemption. See Osborne, Mortgages (2 ed.) at 146. After tracing the history of the vices to prevent a mortgagor from being able to redeem the mortgage, the author states:
Not quite so clear a case was a stipulation providing for a jump in the interest rate on nonpayment on a fixed law day. The difficulty was that if the higher rate was stipulated for at the outset with a reduction for punctual payment the agreement is valid. Yet in both cases precisely the same amounts of money would be payable at exactly the same times. Of course a case could be imagined where the jump in interest rate would be so enormous, or the provision for the payment of a bonus on default so huge, that as a practical matter the mortgagor would be unable to pay it. This clearly would be recognized as merely a device to make the mortgage irredeemable and therefore bad. But quite apart from anything of this sort, and with a jump in interest rate which is relatively mild, although any jump does, of course, make it more difficult to redeem, nevertheless, the decisions seem correct upon a principle which underlies relief from all penalties and forfeitures. That principle is that relief will be granted where there has been a misreliance upon the "mirage of hope." Ordinarily the courts have talked in terms of granting relief because of solicitude for the "impecunious landowner" or "necessitous men [who] are not, truly speaking, free men." But another most important factor is in the mortgagee playing upon the optimism to which all mankind is prone, the "over-confidence in ones own capacities and faith in a special providence [which] leads us to over-sanguine commitments." Equity takes this human failing into account. So where the bargain is expressed in terms of a future jump in the amount due, which the mortgagor never expects to become liable for, rather than a firm commitment to the higher rate at the very outset which he knows he has bound himself to pay but may reduce by future effort, the bargain is bad. The same applies to a bonus to be paid to the mortgagee on redemption under certain conditions. And a stipulation that unpaid interest should be capitalized and interest paid on it has been held void. [Id. at 146-147.]
In 3 Powell, Real Property, § 460(3)(f) it is stated:
Even if prepayment penalties apply, they cannot be enforced if prepayment is necessitated by condemnation or if the mortgage debt from the proceeds of a casualty insurance policy following destruction of the property. Similarly, a mortgagee who accelerates the debt upon default or who forecloses will not be able to collect the prepayment penalty. [at ___.]
In Jala Corp. v. Berkeley Savings and Loan Association, 104 N.J. Super. 394, 250 A.2d 150 (App.Div. 1969), the Appellate Division affirmed a judgment in favor of the mortgagor who *27 sued the mortgagee to recover the monies withheld by the mortgagee from a payment to the mortgagor and mortgagee by the State in connection with a condemnation action for the amount not disbursed by the mortgagee on the grounds that the mortgagor was prepaying the mortgage.
Also included in the funds so retained was the sum of $2,820.30 as a prepayment charge levied against plaintiffs which defendant asserted it was entitled to collect by reason of the following clause contained in the mortgage:
It is further understood and agreed that the mortgagors shall have the further right and privilege to make payment of the unpaid balance hereof at any time during the first 5 years of the term hereof, provided there is paid in addition to the amount due hereunder for principal and interest a sum equal to six months' interest computed on the unpaid balance of said mortgage as a prepayment privilege fee. [Id. at 397, 250 A.2d 150.]
After reviewing several out-of-state cases disallowing prepayment penalties or premiums, the court stated:
We agree with the logic of and the conclusions reached in the three above-cited cases, and we regard the analogy of the Pennsylvania case pertinent to the present situation. Thus, in the instant case we find that plaintiffs did not voluntarily exercise any "right" or "privilege" to prepay the unpaid balance of the mortgage, as was contemplated by the prepayment clause contained in the mortgage. Rather, the mortgagee was prepaid by reason of the fact that the State pursuant to its paramount right of eminent domain took the property for public use. As a result of this action by the State the mortgagor's fee interest in the premises and the mortgagee's lien thereon was destroyed, and by operation of law both were transmuted to a present right to the funds deposited by the State with the clerk of the court. We cannot construe the language of the prepayment clause to make it applicable to the instant situation. Rather, we hold that the parties in inserting this clause did not contemplate a taking of the premises by eminent domain. As was said in Chestnut Corp. [v. Bankers Bond & Mortgage Co., 395 Pa. 153, 149 A.2d 48 (1959)], supra, "If defendant (the obligee-mortgagee) believed it should be entitled to the premium under these circumstances it could easily and should have so provided in the bond and/or mortgage. In the absence of such a provision we believe that defendant who received the entire unpaid principal and accrued interest of its mortgage is not entitled to the prepayment premium. [Id. 104 N.J. Super. at 400-401, 250 A.2d 150.]
In In re LHD Realty Corp., 726 F.2d 327 (7 Cir.1984), the National Life Insurance Company (National) was the assignee of a note and mortgage of LHD Realty (LHD) in the principal amount of $775,000. The mortgage was on an office building *28 and parking garage and was security for the note. The prepayment provision was as follows:
The clause controlling prepayment states:
No prepayment of principal may be made during the first ten (10) loan years. After tenth (10) loan year, the right is reserved upon sixty (60) days' prior notice in writing, to prepay on any interest payment date all or any portion of the note principal by paying a premium on the amount prepaid as follows: During the eleventh (11th) loan year at five (5%) per cent, declining one (1%) per cent per year thereafter to a minimum of par.
In the event of prepayment in full only, and in addition to the foregoing, an additional prepayment premium will be payable in an amount computed as follows: The average "additional interest" payments for the three (3) preceding years capitalized at thirty-three and one-third (33 1/3%) per cent. [Id. at 329, n. 1.]
The note was issued in 1972, and in June 1980 LHD filed a petition under chapter 11 of the Bankruptcy Code. By August 1981, LHD had failed to make four monthly payments. National filed a request to lift the automatic stay and to proceed with the foreclosure action in the state court. Thereafter, LHD filed for permission to sell the building to a third party. The bankruptcy court permitted LHD to sell the building. The bankruptcy court held that the mortgagee was entitled to the prepayment premium. The district court reversed that determination. The Circuit Court of Appeals said in part:
There are, however, some limitations upon the right to receive a prepayment premium. For one, the lender loses its right to a premium when it elects to accelerate the debt. Selvin Container Corp. v. Provident Federal Savings & Loan Ass'n, 98 Ill. App.3d 646, 54 Ill.Dec. 189, 424 N.E.2d 939 (1981). This is so because acceleration, by definition, advances the maturity date of the debt so that payment thereafter is not prepayment but instead is payment made after maturity. For another, courts infer an exception when a mortgage upon the property being condemned is satisfied by a government exercising its power of eminent domain. Jala Corp. v. Berkeley Savings & Loan, 104 N.J. Super. 394, 250 A.2d 150 (1969). Finally, courts infer an exception when payment results from destruction of the mortgaged property through an insured-against casualty such as a fire. Chestnut Corp. v. Bankers Bond & Mortgage Co., 395 Pa. 153, 149 A.2d 48 (1959).
We think that the case before us falls within the acceleration exception. The contract between National and LHD authorized National, "without notice, [to] declare the remainder of the debt at once due and payable." When a lender has the option to accelerate, "`[i]t is only necessary that the mortgagee show an unmistakable intention to exercise the option, and this may be done by taking steps for foreclosure, filing foreclosure suit, sale pursuant to the mortgage, or *29 advertisement of the property for sale pursuant to the terms of the mortgage.'" Rosenthal, The Role of Courts of Equity in Preventing Acceleration Predicated Upon a Mortgagor's Inadvertent Default, 22 Syracuse L.Rev. 897, 899, n. 8 (1971) (quoting from 2 L.Jones, Mortgages Sec. 1512 (8th ed. 1928)) [emphasis supplied] 446 West 44th St., Inc. v. Riverland Holding Corp., 267 App.Div. 135, 44 N.Y.S.2d 766, 768 (1943) (election to accelerate "must consist either of notice of election to the mortgagor or of some unequivocal overt act manifesting an election....") [citation omitted]
The point is, we think, that a lender may abandon or waive its claim to interest payable over a period of years and to what amounts to insurance against a decline in interest rates. Thus, the lender, by its acts, may establish that it prefers accelerated payment to the opportunity to earn interest over a period of years. It is not appropriate, under these circumstances, for the lender to receive a prepayment premium in lieu of the interest foregone since it has voluntarily waived the unpaid interest in the expectation of accelerated payment of the remaining principal.
Thus, we think National exercised its option to accelerate no later than August 26, 1981, when it filed its request for relief from the automatic stay. National told the bankruptcy court that "it is obvious there is no reasonable likelihood of rehabilitating the ailing Debtor [LHD]" and asked the bankruptcy court to allow it to "proceed with foreclosure" or to dismiss or convert the Chapter 11 proceeding. National's actions established that it preferred, sensibly no doubt, accelerated payment over the "opportunity" to earn interest from the LHD loan over a period of years.
National argues, however, that a per se rule that acceleration precludes a claim for a prepayment provision will cause borrowers to default intentionally and to court acceleration and foreclosure in order to avoid prepayment liability. But this scenario seems implausible given the ramifications of default for a borrower's credit rating and the ability of the lender to sidestep the ploy by suing only for overdue payments as they mature, together with attorney's fees. Also, the borrower would run the risk of not being able to repay the loan in time to defeat the foreclosure sale. Should such intentional defaults become a problem, however, we believe courts could deal with the difficulty by denying the acceleration exception in appropriate cases. In any event, National does not suggest the LHD implemented such a strategy in the case before us.
....
But we do not believe that the fact LHD may have cooperated, or acted in concert with National's acceleration, changes the effect of National's election to trade payment now for interest payments later. A contrary rule would seem to enmesh courts in unnecessary hunts for the "true" cause of a loan repayment. National fired the first shot and is bound thereby. [Id. at 330-333.]
In Kilpatrick v. Germania Life Insurance Co., 183 N.Y. 163, 75 N.E. 1124 (N.Y.Ct.App. 1905), the Court of Appeals reversed the judgment of the lower court which denied a claim *30 to recover $1,000. In connection with the payment of a mortgage which had been accelerated by the mortgagee and foreclosure action commenced, the Court of Appeals noted that, after a representative of the mortgagor had informed the attorney for the mortgagee that it was likely that the mortgagor would have a new loan and pay-off the mortgage, the mortgagee withdrew the foreclosure action and demanded the $1,000 prepayment fee. The mortgagor paid the $1,000 fee in connection with paying off the mortgage. The mortgagor then sued the mortgagee to recover that amount alleging that it was paid under duress, and also suing for money had and received. In the majority opinion, the Court of Appeals said:
The sole question presented is whether the payment of this bonus of $1,000 was, under the circumstances, voluntary or exacted when the plaintiff was under duress. It will be observed that at the time when the defendant saw fit to avail itself of the covenant contained in the mortgage providing that default in payment of interest should, at its option, make the principal sum and interest due and payable immediately, the time had not yet arrived when the plaintiff was permitted to exercise his option to pay the principal sum, interest and said bonus at any time after August 28, 1900, and prior to August 1, 1901. At this time, on August 1, 1900, it was for the defendant to decide whether it would elect to treat the mortgage debt as due. It so elected, and instituted an action of foreclosure. From the moment of this election the mortgage debt became due, and the plaintiff was practically warned that he must take measures to protect himself. It is undisputed that before the discontinuance of the foreclosure action the plaintiff had changed his position, had obligated himself to make a new loan on the mortgaged premises, and necessarily had contracted financial obligations in that connection. After these negotiations for the new loan had proceeded to a point when the plaintiff was advised as to the time when he might expect the money thereon, he notified the defendant that on a day certain he would pay the mortgage and interest. Thereupon the defendant's counsel stated to the plaintiff that the foreclosure action had been discontinued and that an action would be begun to recover the interest only, and that the plaintiff would not be permitted to discharge the mortgage debt and interest unless he also paid the bonus.
The defendant having placed the plaintiff in this position, it had no power, by discontinuing the foreclosure action, to restore the status of the parties as existing on August 1, 1900, when plaintiff made default in the payment of interest. The election made by defendant at that time to treat the mortgage debt as due became final and irrevocable after plaintiff's change of position and assumption of legal obligations, the direct result of that election. Thenceforward the right to exact the bonus, so called, of $1,000 departed from the defendant, because it had voluntarily waived it by bringing suit to foreclose the *31 mortgage and expressly alleging its election in the complaint. It could not again elect by withdrawing its previous election. [Id. 75 N.E. at 1125.]
The note and mortgage documents were executed in New York and stated that they were to be construed in accordance with the law of New York. Since the mortgage is secured by real property in New Jersey, the foreclosure action necessarily has to be brought in New Jersey. In those circumstances the construction of the instruments should be controlled by the law of New York, but the remedies to be provided are those provided by the law of New Jersey. Guardian Life Insurance Co. v. Rita Realty Co., 17 N.J. Misc. 87, 5 A.2d 45 (Sup.Ct. 1939); cf. 16 Am.Jur.2d, Conflict of Laws, §§ 38 and 40. The reasoning reflected in LHD Realty, supra, and in Kilpatrick, supra, that where the mortgagee accelerates the mortgage, the amount due is the principal, plus accrued interest is the act of the mortgagee and, hence, payment of that amount would not amount to a prepayment within the meaning and purpose of prepayment clauses is persuasive.
The prepayment clause in the notes and mortgage which are the subject matter of this action refer to involuntary payments. In Berenato v. Bell Savings and Loan Association, 276 Pa.Super. 599, 419 A.2d 620 (1980), the mortgagee had foreclosed a mortgage and obtained a judgment against the mortgagor. A third-party creditor, which had a substantial lien junior to the mortgage, arranged with the mortgagee to bring the mortgage current and continue payments on it so that the real property and improvements could be sold by the mortgagor. The third-party creditor found a buyer and the mortgagor sold the property and paid off the mortgage including a prepayment penalty. The mortgagor then sued to recover the $10,746.27 for the prepayment premium. The trial court found that the payment had been "involuntary." The Superior Court said:
Berenato also argues that there was duress arising out of the outstanding judgment which Bell had obtained on the Bond. He contends that Bell intentionally kept him ignorant of the cure of the default and the return to good *32 standing of the mortgage while keeping the judgment in effect as a coercive tactic to eliminate his freedom of choice and force the sale of the property.
There is some authority for the proposition that where a mortgagee chooses to foreclose on a mortgage, thereby electing to treat the entire mortgage as due, and the mortgagor substantially changes his position in reliance on that action, as by securing a second loan to pay off the mortgage, the mortgagee is not entitled to revoke his acceleration of the mortgage and treat the early payment as one subject to a premium. Kilpatrick v. Germania Life Insurance Co., 183 N.Y. 163, 75 N.E. 1123 (1905). However, a prepayment bonus was upheld in West Portland Development Co. v. Ward Cook, Inc., 246 Or. 67, 424 P.2d 212 (1967), in which it was found that the mortgagor had not relied to his detriment before the mortgagee elected to rescind his notice of default, and therefore was required to deliver the prepayment amount.
The present case more nearly parallels West Portland Development. Here the mortgage was returned to good standing and kept current by the monthly payments of First Pennsylvania. At the same time the sheriff's sale in execution of the confessed judgment was stayed. This clearly indicates that Bell intended to reinstate the mortgage and forego its remedy on the Bond judgment at least temporarily. Indeed it is apparent that this action was taken in reliance on the efforts of First Pennsylvania to obtain a buyer for the property. The distinguishing element in the Kilpatrick and West Portland Development cases is reliance. In the present case,, it does not appear that Berenato changed his position to his detriment to pay off the mortgage in advance. By agreeing to the sale arranged by First Pennsylvania, Berenato was relieving himself of a number of obligations which might have remained outstanding had the property been disposed of by sheriff's sale. [Id. 419 A.2d at 622.]
In the setting of this case, the court construes the word "involuntary" to mean actions taken by third parties which force the payment of the mortgage prematurely. That is not the situation that exists on the facts in this case. Based upon what is in the record of this case none of the defendants have taken action to force Clinton Capital Corporation to accelerate the mortgage in order to pay it off so that they could avoid a prepayment penalty.
By accelerating the mortgage on the grounds of the default under the interest provisions of the instruments, the interest rate went from 15% annually to 2% per month or 24% per year.
The proceeding to foreclose a mortgage is an equitable proceeding. To add a prepayment penalty of 10% of the outstanding balance in this case, namely $19,482.88, certainly adds to *33 the difficulty of the mortgagors to redeem and in other terms takes on the characteristics of a penalty.
This court concludes that the prepayment penalty in the amount of $19,482.88 is not allowed.