827 A.2d 1154 (2003)
362 N.J. Super. 336
WESTMARK COMMERCIAL MORTGAGE FUND IV, Plaintiff-Respondent,
v.
TEENFORM ASSOCIATES, L.P., a New Jersey Limited Partnership, 680 Memorial Parkway Realty Holding, LLC, a New Jersey Limited Liability Company and Route 88 Office Associates, Ltd., a New Jersey Limited Partnership, Defendants-Appellants.
Superior Court of New Jersey, Appellate Division.
Argued May 14, 2003.
Decided July 22, 2003.
*1155 Ruth M. Meyer, argued the cause on behalf of appellant (Berger & Bornstein, attorneys, Morristown; Ms. Meyer, on the brief).
Joseph A. Boyle, argued the cause on behalf of respondents (Kelley Drye & Warren, attorneys; Mr. Boyle and Geoffrey W. Castello, of counsel; Paul L. Kattas, Parsippany and Lauri A. Herbert, on the brief).
Before Judges WEFING, WECKER and FUENTES.
The opinion of the court was delivered by WEFING, J.A.D.
This is a mortgage foreclosure action in which defendants appeal from certain aspects of a Final Judgment of Foreclosure entered on January 15, 2002. After reviewing the record in light of the contentions advanced on appeal, we affirm but remand for entry of a corrected judgment.
On July 28, 1999 defendants executed a promissory note to plaintiff for the sum of $3,145,000. The note carried an interest rate of eight percent and called for equal monthly payments of $23,076.90 for a period of five years, at which point the balance was due in full. To secure their obligation, defendants granted plaintiff mortgages on three parcels of commercial property, one in Carlstadt, in Bergen County, one in Brick, in Ocean County and one in Phillipsburg, in Warren County.
Less than a year later, defendants fell behind in their payments. Plaintiff filed a complaint in foreclosure in July 2000 and venued the matter with the Chancery Division in Bergen County. In November 2000, plaintiff was granted partial summary judgment and the matter was forwarded to the Office of Foreclosure, where plaintiff sought entry of final judgment. Defendants disputed the amounts due under the note and mortgages and the matter was returned to the Chancery Division for a hearing. Following that hearing, the Chancery Division concluded that the amounts sought, totaling in excess of $200,000, were reasonable and were due and owing. A Final Judgment of Foreclosure was entered thereafter, from which defendants have appealed.
The matters in dispute fall into four categories: late fees, default interest, prepayment fees and attorneys fees. The July 28 note provided for all four items. Defendants contend that the amounts allowed in each category are unreasonable and unwarranted. For the reasons stated in this opinion, we disagree.

I
Paragraph 5 of the July 28, 1999 note provides as follows:
5. If any installment under this Note shall not be received by Holder on the date due, Holder may at its option impose a late charge of six percent (6%) of the overdue amount. Considering all of the circumstances on the date of this Note, such late charge represents a fair *1156 and reasonable estimate of the costs that will be sustained by Holder due to the failure of Borrower to make a timely payment. The parties further agree that proof of actual damages would be costly or inconvenient. Such late charge shall be paid without prejudice to the right of Holder to collect any other amounts due or to declare a default under this Note or the other Loan Documents or to exercise any other rights and remedies of Holder. If the late charge provided for herein exceeds the maximum late charge provided by applicable law, such late charge shall be automatically reduced to the maximum late charge permitted by applicable law.
Defendants contend this paragraph is invalid, under the settled principle stated in Westmount Country Club v. Kameny, 82 N.J.Super. 200, 205, 197 A.2d 379 (App. Div.1964), that "[p]arties to a contract may not fix a penalty for its breach .... such a contract is unlawful."
Our analysis of the question presented must perforce begin with the Supreme Court's recent opinion in MetLife v. Washington Avenue Associates, L.P., 159 N.J. 484, 732 A.2d 493 (1999). That also was a foreclosure action involving commercial property. The Note in question in that case called for the debtor to pay a late fee of five percent of any delinquent payments. The debtor challenged that as unreasonable. The Supreme Court, however, disagreed.
The Court noted that liquidated damages clauses in a commercial context between sophisticated parties are presumptively reasonable. Id. at 496, 732 A.2d 493. The Court held that the burden of establishing a particular clause as unreasonable rests upon the party challenging it as such. Ibid. No one factor is determinative whether a clause is reasonable; rather, a reviewing court must look at the totality of the circumstances. Id. at 495, 732 A.2d 493. In conducting its review, the Court deemed it appropriate to look to what is permitted by statute and what constitutes common practice within the industry. Id. at 497, 732 A.2d 493. After completing that survey, the Court concluded that late fees based upon a percentage of the delinquent installment are generally allowed and that five percent was not an unusually large or unreasonable fee in commercial transactions. The Court noted that defendants had presented no evidence to overcome the presumption of reasonableness or to suggest fraud, duress or unconscionability on the part of the lender. The Court thus concluded the five percent late charge was reasonable. Id. at 500, 732 A.2d 493.
Here, defendants argue that plaintiff did not present any evidence that the late fees charged were related to any actual or anticipated damages to plaintiff flowing from late payment. The argument misapprehends MetLife, however. The burden of proof rested squarely on defendants, who presented no evidence at all on the question of the reasonableness of the late fees. We recognize that the late fee in question here is six percent, as opposed to the five percent deemed reasonable in MetLife. In light of the defendants' total failure of proof, however, we have no basis to conclude that an increase of one percentage point is sufficient to overcome the presumption of reasonableness and, thus, affirm the decision of the Chancery Division judge that six percent was reasonable in the context of this case.
There is an additional aspect to defendants' challenge to the award of late fees. They cite Crest Savings & Loan Ass'n v. Mason, 243 N.J.Super. 646, 649, 581 A.2d 120 (Ch.Div.1990), for the proposition that a lender cannot collect late charges "for nonpayments of installments claimed to be *1157 due after the filing of the complaint." We have no quarrel with the principle, but it is inapplicable. This complaint was filed in July 2000 and we have no indication in this record of any late fees charged for any period after that date.

II
Paragraph 6 of the note provides as follows:
6. If the unpaid balance hereof is not received by Holder on the Maturity Date, or on the Acceleration Date (defined below) such amount shall bear interest at the Note Rate plus two (2%) per annum (the "Default Rate") from such date until paid in full. Considering all of the circumstances on the date of this Note, such interest represents a fair and reasonable estimate of the costs and expenses that will result from the loss of use of the money due. The parties further agree that proof of actual damages would be costly or inconvenient. Interest at the Default Rate shall be paid without prejudice to the right of Holder to collect any other amounts due or to declare a default under this Note or the other Loan Documents or to exercise any other rights or remedies of Holder.
Defendants challenge this clause on default interest on the same basis that they challenged the clause on late fees. We apply the same analysis that we did to the question of the reasonableness of the late fees and reach the same conclusion.
The MetLife Court also considered the validity of a clause increasing the rate of interest upon default in payment. The Court found that default interest rates are a common tool utilized by lenders to offset a portion of the damages incurred as a result of delinquent loans. Id. at 501, 732 A.2d 493. The Court held that default interest rates should be measured for reasonableness and if found to be unreasonable, struck down as a penalty. Ibid. In MetLife, the default interest rate was 12.55%, three percentage points higher than the contract rate. The Court determined that the three percent increase in the interest rate was a reasonable estimate of the lender's potential costs of administering a defaulted loan, as well as the potential difference in interest rates between the defaulted loan and a replacement loan the lender may be able to place. Ibid.
Here, the note called for an increase of two percentage points in the interest rate upon default, raising it from eight percent to ten percent. Based upon the result reached in MetLife and defendants' total failure to present any proof to the contrary, the Chancery Division judge correctly determined the ten percent default interest rate to be reasonable.

III
We turn now to the question of the prepayment premium, an issue with which the MetLife Court was not confronted. Paragraph 8 of the July 28, 1999 note provided for a prepayment premium and specified the method of its calculation. The paragraph included the following language, which was set off from the balance of the text by being placed in all capital letters:
BORROWER ACKNOWLEDGES AND AGREES THAT SUCH PREPAYMENT PREMIUM REPRESENTS A REASONABLE AND FAIR ESTIMATE OF COMPENSATION FOR THE LOSS THAT HOLDER MAY SUSTAIN FROM THE PREPAYMENT OF THIS NOTE. BY INITIALING BELOW, BORROWER ACKNOWLEDGES AND AGREES THAT IT HAS NO RIGHT TO PREPAY THIS NOTE IN WHOLE OR IN *1158 PART WITHOUT THE PREPAYMENT PREMIUM EXCEPT AS SPECIFICALLY PROVIDED HEREINAFTER, AND BORROWER SPECIFICALLY ACKNOWLEDGES AND AGREES THAT IT SHALL BE LIABLE FOR THE PREPAYMENT PREMIUM ON ANY ACCELERATION OF THIS NOTE IN ACCORDANCE WITH ITS TERMS AT ANY TIME.
IN THE EVENT OF AN ACCELERATION, THE PREPAYMENT PREMIUM SHALL BE DETERMINED BY HOLDER AS OF THE DATE A NOTICE OF DEFAULT AND ACCELERATION IS SENT BY HOLDER, AND SHALL BE DUE AND PAYABLE AS OF THE DATE ON WHICH A NOTICE OF DEFAULT AND ACCELERATION IS SENT BY HOLDER. THE BORROWER NO LONGER HAS THE LEGAL RIGHT UNDER APPLICABLE LAW TO REINSTATE THE NOTE BY PAYMENT OF DELINQUENT INSTALLMENTS. FURTHERMORE, BY INITIALING BELOW, BORROWER WAIVES ANY RIGHTS IT MAY HAVE UNDER APPLICABLE LAW TO OBJECT TO OR AVOID PAYMENT OF THE PREPAYMENT PREMIUM, AND BORROWER EXPRESSLY ACKNOWLEDGES AND AGREES THAT HOLDER HAS MADE OR ACQUIRED THE LOAN EVIDENCED BY THIS NOTE IN RELIANCE ON SUCH AGREEMENTS AND WAIVER BY BORROWER, THAT HOLDER WOULD NOT HAVE MADE OR ACQUIRED THIS LOAN WITHOUT SUCH AGREEMENTS AND WAIVER BY BORROWER, AND THAT HOLDER HAS GIVEN INDIVIDUAL WEIGHT TO SUCH AGREEMENTS AND WAIVER BY BORROWER IN ENTERING INTO OR ACQUIRING THIS NOTE AND THE OTHER LOAN DOCUMENTS.
Immediately following those two paragraphs was a space for the borrower's initials, which was completed, signaling agreement to those terms.
A borrower does not have the right, under New Jersey law, to prepay a commercial loan, unless the documents afford that right. Norwest Bank Minnesota v. Blair Road Associates, 252 F.Supp.2d 86, 97 (D.N.J.2003). "Since a lender has the right not to have the loan prepaid but rely on collecting the interest contracted for, the lender is entitled to charge a penalty to the borrower for the privilege of prepayment." Ibid.
Prepayment premiums are designed to protect a lender against potential losses it may incur if a loan is paid earlier than contracted for. United States v. Harris, 246 F.3d 566, 573, (6th Cir.2001). "The primary purpose of these clauses is to protect the mortgagee against the loss of a favorable interest yield.... Prepayment may also result in further losses, such as the administrative and legal costs of making a new loan ... and in some cases additional tax liability." Restatement (Third) of Property: Mortgages § 6.2 comment a (1997).
Essentially, prepayment fees are nothing more than liquidated damages clauses. The lender has committed itself to leave its funds outstanding for a fixed period at a given interest yield, and to suffer the market rate risk inherent in this position. If rates rise after the loan has been made, the value of the loan to the lender will fall accordingly. This risk is inherent in the role of a fixed-interest lender, and it is only partially mitigated by the inclusion of a due-on-sale clause. In return for absorbing the risk of rising rates, the lender wants *1159 "call protection": some assurance that if market rates fall, the borrower will not merely prepay the loan and refinance at a lower rate. From the lender's viewpoint, a prepayment is a derogation of the right to earn the agreed yield for the full term even if extrinsic rates drop. In other words, the borrower breaches its obligation to keep the loan in effect for its full term.

[Whitman, Mortgage Prepayment Clause: An Economic and Legal Analysis, 40 U.C.L.A. L.Rev. 851, 871-72 (1993).]
A lender's right to demand a prepayment premium is not unlimited. A prepayment premium cannot be charged, for instance, if the prepayment is the result of the property having been taken by eminent domain. Jala Corp. v. Berkeley Savings & Loan Ass'n, 104 N.J.Super. 394, 250 A.2d 150 (App.Div.1969). In addition, a prepayment premium cannot be charged if the prepayment results from destruction of the property by casualty such as fire and insurance proceeds are used to pay the loan. Id. at 400, 250 A.2d 150 (citing Chestnut Corp. v. Bankers Bond & Mortgage Co., 395 Pa. 153, 149 A.2d 48 (1959)).
Courts across the country have divided on the question whether a prepayment premium may be properly imposed, however, when the prepayment is the result of the lender's accelerating the debt.
One of the leading authorities on the question is In re LHD Realty Corp., 726 F.2d 327 (7th Cir.1984). The court in that case refused to allow a prepayment premium after the note had been accelerated. The court explained that, by definition, acceleration "advances the maturity date of the debt so that payment thereafter is not prepayment but instead is payment made after maturity." Id. at 330-31. In setting forth its reasoning, the court stated:
[t]he point is, we think, that a lender may abandon or waive its claim to interest payable over a period of years and to what amounts to insurance against a decline in interest rates. Thus, the lender, by its acts, may establish that it prefers accelerated payment to the opportunity to earn interest over a period of years. It is not appropriate, under these circumstances, for the lender to receive a prepayment premium in lieu of the interest foregone since it has voluntarily waived the unpaid interest in the expectation of accelerated payment of the remaining principal.

[Id. at 331.]
The LHD court relied upon Slevin Container Corp. v. Provident Federal Savings & Loan Assoc., 98 Ill.App.3d 646, 54 Ill. Dec. 189, 424 N.E.2d 939 (1981). Slevin borrowed $468,000 from Provident and executed a note and mortgage which contained both a due-on-sale clause and a provision for a prepayment premium. Slevin sold the property and notified Provident, which both exercised its rights under the due-on-sale clause and also sought to impose the prepayment premium. Slevin commenced a declaratory judgment action, seeking a determination that Provident had to release its security interest in the property without collecting the prepayment premium. The court agreed with Slevin, saying "We believe where the discretion to accelerate the maturity of the obligation is that of the obligee, the exercise of the election renders the payment made pursuant to the election one made after maturity and by definition not prepayment." Id. at 941.
Some commentators have relied upon LHD for the proposition that a mortgagee who accelerates payment is not entitled to collect a prepayment premium. 3 Powell, *1160 Real Property, § 460(3)(f); 5 Tiffany, Real Property, § 1472.
Other courts have held to the contrary. Parker Plaza West Partners v. UNUM Pension & Ins., 941 F.2d 349, 355 (5th Cir.1991); In re Financial Center Associates of East Meadow, 140 B.R. 829 (Bkrtcy.E.D.N.Y.1992). Cases are collected in Annotation, Construction and Effect as to Interest Due of Real Estate Mortgage Clause Authorizing Mortgagor to Prepay Principal Debt, 86 A.L.R.3d 599.
The Restatement (Third) of Property, supra, aligns itself with those authorities which permit collection of a prepayment premium in the event of acceleration. It notes the following:
[I]f the borrower fully understood and had the opportunity to bargain over the clause, either with the assistance of counsel or by virtue of the borrower's own experience and expertise, the clause will ordinarily be enforced.
* * *
Controversy has sometimes arisen concerning the collectability of a prepayment fee when the prepayment results from the mortgagee's acceleration of the secured debt on account of the mortgagor's default. Such prepayments have occasionally been described as "involuntary." In the first instance, the question is simply whether the relevant clause in the mortgage or the debt instrument purports to cover this sort of prepayment. If it clearly does so, there is no general reason courts should refuse to enforce it. The payment may be "involuntary" in the sense that the mortgagor would prefer that the debt not be accelerated, but it is still the mortgagor's action in defaulting that triggers the acceleration. The mortgagee obviously has no duty to refrain from accelerating a defaulted loan, and the acceleration gives rise to a payment that may impose costs and risks on the mortgagee identical to those flowing from a voluntary prepayment. Indeed, the mortgagee can fairly assert that the risk of a prepayment resulting from default and acceleration is well within the range of risks which the mortgagee has agreed to absorb in return for the fee. Of course, in a particular instance a court might find a demand for a prepayment fee on an accelerated debt to be unconscionable or to violate the duty of good faith and fair dealing.
[Restatement (Third), supra, § 6.2 comment c.]
Judge Bassler recently had the occasion to consider the question in Norwest Bank Minnesota, supra. He noted that while the Supreme Court in MetLife was not directly confronted with a prepayment premium, its reasoning, which treated late fees and default interest as part of the negotiated cost of doing business, was equally applicable. Id. at 97.
There is one reported case in New Jersey which has considered the question, Clinton Capital Corp. v. Straeb, 248 N.J.Super. 19, 589 A.2d 1363 (Ch.Div. 1990). Clinton Capital was also a foreclosure action. The note included a ten percent prepayment premium and stated the premium would be due "whether prepayment is voluntary or involuntary, including any prepayment made after exercise of any acceleration provision contained in this Note ..." Id. at 21, 589 A.2d 1363. A similar provision was included in a rider to the underlying mortgage. Id. at 22, 589 A.2d 1363. In that case, the chancery judge found the reasoning of LHD to be persuasive and disallowed the prepayment premium. Id. at 31, 589 A.2d 1363. Clinton Capital has been criticized by some commentators, Whitman, supra, 40 U.C.L.A. L.Rev. at 923-27.
*1161 We are satisfied that in the context of the present action, the position adopted by the Restatement and by Judge Bassler in Norwest Bank, supra, is correct. While there is a certain ineluctable logic to the statement that payment after acceleration cannot be considered prepayment, we can perceive no reason why the debtor should be relieved of the terms of the contract freely entered into. The terms were clear and unambiguous, the parties clearly experienced and sophisticated in loan transactions of this type. The certainty of the remedy provided by the clause undoubtedly affected the pricing of the loan. If we were to deem the clause unenforceable, we would be providing defendants with a better contract than they were able to negotiate for themselves; we decline to do so. Karl's Sales & Service v. Gimbel Bros., 249 N.J.Super. 487, 493, 592 A.2d 647 (App.Div.1991) (noting that courts may not "remake a better contract for the parties than they themselves have seen fit to enter into, or to alter it for the benefit of one party and to the detriment of the other"). To the extent that Clinton Capital stands for the proposition that a lender who accelerates a loan may not collect a prepayment premium, we do not consider it good law any longer.
Nor do we consider it necessary in the context of this case for the chancery judge to have conducted a hearing to determine whether the borrowers were versed in such complex transactions. Judge Bassler noted in Norwest, supra, that the principal of the debtor in that case was also the principal in MetLife. Norwest, supra, 252 F.Supp.2d at 97. The mortgages and note in the present matter were executed by that same principal.
The enforceability of such a prepayment premium clause should be measured in the same manner as those providing for late fees and default interestreasonableness. And, as with those clauses, defendants presented no evidence of unreasonableness or sharp practices at the hearing the chancery judge afforded them. We affirm the determination that the prepayment premium at issue here was a reasonable charge.

IV
We turn now to the final matter, the award of attorneys fees. The chancery judge awarded a total fee of $45,153.46. Defendants contend that the amount awarded exceeds the permissible limit under R. 4:42-9(a)(4) and that a hearing should have been held to determine the reasonableness of the fee request.
The award of attorneys fees is governed by R. 4:42-9. The eight subsections of the rule deal separately with the instances in which a court may award counsel fees. Under subsection (a)(4), a court may award a counsel fee in a foreclosure action and the rule specifies the manner in which the fee is to be calculated:
on all sums adjudged to be paid the plaintiff amounting to $5,000 or less, at the rate of 3.5%, provided, however, that in any action a minimum fee of $75 shall be allowed; upon the excess over $5,000 and up to $10,000 at the rate of 1.5%; and upon the excess over $10,000 at the rate of 1%, provided that the allowance shall not exceed $7,500. If, however, application of the formula prescribed by this rule results in a sum in excess of $7,500, the court may award an additional fee not greater than the amount of such excess on application supported by affidavit of services. In no case shall the fee allowance exceed the limitations of this rule.
Defendants complain that the amount awarded does not comport with that percentage scale. Defendants also complain that plaintiff's counsel did not file an appropriate affidavit of services as required *1162 for a fee in excess of $7,500. Defendants overlook the fact, however, that plaintiff's counsel had already submitted an affidavit of services to the Office of Foreclosure when it requested entry of judgment. In light of the familiarity of the chancery judge with this matter, we see no practical benefit to returning the matter to the judge for a further affidavit and consideration.
At oral argument, counsel were questioned whether the chancery judge was required to review that affidavit in detail and make findings as to the reasonableness of the requested fee, reviewing both the hourly rate sought and the amount of work performed. We are satisfied that no such hearing was required in this matter.
We reach this conclusion for two reasons. R. 4:42-9(b) sets forth the details to be included in an affidavit of services submitted in support of an application for counsel fees. The introductory sentence to this subsection reads, "[e]xcept in tax and mortgage foreclosure actions, all applications for the allowance of fees shall be supported by an affidavit of services addressing the factors enumerated by RPC 1.5(a)." The reason for the exception is the method of calculation of counsel fees in foreclosure actions, utilizing a sliding percentage scale, which differs from the methods employed in other actions. It is immaterial whether the method outlined in paragraph (b) of the rule might enable an attorney to claim a greater fee in a foreclosure action than would otherwise be permissible under subsection (4). As the comments to the rule make clear, a greater fee cannot be awarded.
Defendants complain that the amount awarded exceeds the permissible award under the rule. They contend the award should only have been $36,731.96, not $45,153.46. They overlook, however, the fact that the award includes two earlier fee awards, one for $5,500 and one for $2,000 in connection with motions in aid of litigant's rights that plaintiff had been forced to file. Once those amounts are subtracted, as well as the costs of $921.50, the balance is $36,731.96, the sum defendants say is correct.
Finally, we reject completely defendants' contention that the trial court should have conducted a hearing before making a fee award. As we have noted, the chancery judge was intimately familiar with this matter. The matter was strongly contested and also involved a question of law upon which there was no controlling precedent. Plaintiff prevailed on all issues. The fee award was entirely reasonable and computed correctly.
The judgment, however, must be modified in one regard. The Final Judgment was twice amended after it was entered, each time for a clerical error in the calculation of interest. The amount due plaintiff in the Second Amended Final Judgment is $3,630,425.04, which is less than the amount in the original Final Judgment. The attorney fee calculation, however, was never modified to reflect this reduction. We have performed the calculation and the attorneys fees should be reduced by $278.71, to $44,874.75.
One final item remains. After oral argument, plaintiff filed a motion for leave to file a supplemental brief on the question of attorneys' fees. Defendants objected to this motion. In light of our disposition of the question, we dismiss the motion as moot.
The order under review is affirmed and the matter is remanded for entry of a corrected Judgment of Foreclosure.