PHILIP J. BOWERS, appellant,

*v.*

TOWN OF BLOOMFIELD, respondent.

[Argued November 21st, 1912.   Decided March 3d, 1913.]

In condemnation proceedings where the lands are liable at the time the petition is filed to future assessments for municipal improvements already made, and the assessments are in fact made before the final award and payment for the land, the court of chancery may upon the money being paid into court, pursuant to the statute, order the amount of the assessments paid to the municipality.

---

On appeal from a decree of the court of chancery advised by

Vice-Chancellor Emery, whose opinion is reported in *80 N. J. Eq. (10 Buch.) 1.*

*Mr. Ralph. E. Lum (Messrs. Lum, Tamblyn & Colyer* on the brief), for the appellant.

*Mr. Charles F. Kocher,* for the town of Bloomfield, respondent.

The opinion of the court was delivered by

SWAYZE, J.

Lands of the appellant were condemned at the instance of the Essex county park commission. At the time of filing the petition, certain improvements had been made by the town of Bloomfield and the city of East Orange upon the petition of the appellant; some were then complete; others were completed the day after. The land was liable to a special assessment for benefits therefor. There was an appeal from the award of the commissioners, and while the proceedings were pending, assessments were made and confirmed. Thereafter, upon the verdict of a jury ascertaining the value of the land, the park commission obtained an order for the payment of the money into the court of chancery pursuant to the statute. It was then agreed between the parties that $6,000 should be paid into court, the balance of the award paid to the appellant, and that he should forthwith file his petition against the city of East Orange (which was interested in the same way as Bloomfield) and the present respondent, to the end that the rights of the appellant and the municipalities to the fund might be determined. The vice-chancellor advised a decree that the assessments for benefits be paid to the municipalities.

The view taken by the court of chancery was that the title did not pass until the park commission paid the amount awarded by the jury, and that in the meantime the assessments had become liens upon the land. We think it unnecessary to consider this question. The real question is whether the park commission had the right to have the liens, assuming that they existed, discharged out of the fund. That question is not determined by the

situation at the time of payment of the award. In *Sherwin* v. *Wigglesworth, 129 Mass. 64,* it was held that the owner was not chargeable with taxes and betterments assessed upon the land while the proceedings were pending where the taxes were assessed and the betterments begun after the petition was filed. The same result has been reached in New York by allowing an award, in addition to the value of the land when the proceedings are begun, of subsequent taxes and assessments for improvements authorized thereafter. *In re Mayor, &c., of City of New York, 58 N. Y. Supp. 58.*

The decision of the special term to the contrary in a contemporaneous case was subsequently reversed, and the judgment of reversal affirmed by the court of appeals. *In re Riverside Park Extension, 58 N. Y. Supp. 963; In re Mayor, &c., of City of New York, 69 N. Y. Supp. 742; 60 N. E. Rep. 1116.* This result is manifestly equitable. The landowner can get only the value of his land at the date of filing the petition to condemn; he ought not to be assessed for subsequent betterments which cannot profit him. The present case is, however, different. Here the improvements were made at the time the petition was filed; the increased value of the land therefrom had already accrued and must be presumed to have been embraced in the award; there is no suggestion that the value due to the betterments had increased between that date and the date of the assessments, nor that the amount of the assessments exceeded the amount of the accrued benefit at the date of filing the petition in condemnation. The improvements had been made upon the petition of the landowner himself, and if he is to be free of paying the municipalities for the value they have added to his property, he will receive the benefit of that increased value at the expense of the municipalities. The case is one of first impression, as far as we have been able to ascertain, and we are referred to no case precisely in point. We must, therefore, rely upon the application of reason to the legal situation. What the landowner is entitled to by the statute and under the constitutional provision is just compensation for what is taken from him. He is to be made whole for the loss of his land, but he is not to gain by reason of the condemnation at the expense of his neighbors. The amount awarded by

the commissioners or the jury is not always or necessarily, perhaps not often, the same as the just compensation of the owner of the fee. The award represents in a lump sum the total value of the land, including the interest of everyone therein, and where there are diverse interests the statute provides that the money may be paid into the court of chancery, to be distributed according to law. The duty thus imposed upon the chancellor makes it necessary for him to ascertain the amount of the just compensation for each interest. In case of a mortgage, as in *Bright* v. *Platt, 32 N. J. Eq. (5 Stew.) 362*, or of existing tax liens, as in the case of *In re Sleeper, 62 N. J. Eq. (17 Dick.) 67*, the matter is simply one of calculation. In case of a leasehold, which may arise (*Pennsylvania Railroad Co.* v. *National Docks, &c., Co., 57 N. J. Law (28 Vr.) 86; Zimmerman* v. *Hudson and Manhattan Railroad Co., 76 N. J. Law (47 Vr.) 251; Daab* v. *Hudson County Park Commission, 77 N. J. Law (48 Vr.) 36*), the matter would be more difficult. If we can regard the right to enforce restrictive covenants as a property right (*Herr* v. *Board of Education, 82 N. J. Law (53 Vr.) 610*), the difficulty would be still greater. However difficult the task may be, the legislature has imposed it upon the court of chancery and the task must be performed before the award which represents the whole value of the land can be distributed. The present case is not exactly the case of a subsisting mortgage or tax lien, but approximates those cases. The just compensation to which the appellant is entitled is the sum which would have been paid him if he was willing but not compelled to sell by a buyer who desired but was not compelled to buy. We think there can be no doubt that such a buyer and seller would in fixing a price have taken into account the certainty of a speedy assessment for the improvements. The buyer would give less because he would soon have to pay for the improvements; the seller would take less because he would thereby escape the impending pecuniary liability. In view of the actual situation—improvements within twenty-four hours of completion, and the certainty of an assessment within a few months—it is reasonable to fix the diminution in price attributable thereto at the amount of the assessments. After just compensation thus ascertained is paid to the landowner a balance

remains. To whom does it belong? To award it to the land-owner would be to give him the value of improvements made by the municipalities for which he had petitioned and was under an obligation to pay implied from the statutory liability to assess-ment. The right of the municipalities to levy the assessment is none the less a property right because it is in the nature of a chose in action not yet reduced to possession; it is a claim upon the land of which every well-advised buyer and seller would take notice and for which both would allow in the purchase price. It is a claim that must either be lost to the municipalities whose expenditure has produced the added value, or paid by the con-demning agency in addition to the value of the land at the time of filing the petition, or paid out of the fund which has been made that much larger. To adopt the first view is to deprive the municipalities of a right without compensation, and although the legislature has control of municipalities as public agencies, we cannot think it was the legislative intent to do so in cases like the present; the whole scheme of assessments for benefits is an argument to the contrary. To adopt the second view is to compel a condemning agency exercising by legislative authority the sovereign power of eminent domain, to pay twice for the same items of value; we cannot think that was the intent; the statu-tory provision authorizing the payment of the award into court is an argument against thus subjecting the land to a lien in addi-tion. There remains the third view. To adopt it is no more than to treat the fund as representing the land, as in fact it does, and as subject to the liens to which the land would be subject. This result does no injustice to the appellant since the assess-ments cannot in theory of law have exceeded the added value of his lands and may have been less. It is no more than just to the municipalities thus receiving compensation for the assessments which became liens before the title actually passed, and for the right to acquire liens for future installments, liens and rights which were in effect foreclosed by the condemnation proceedings. Finally, this result is just to the park commission which thus acquires a clear title to the land free of liens, by paying its value at the time of filing the petition as the statute intends it shall.

The decree is therefore affirmed, with costs.

*For affirmance*—THE CHIEF-JUSTICE, GARRISON, SWAYZE, TRENCHARD, BERGEN, MINTURN, KALISCH, BOGERT, VREDEN-BURGH, CONGDON, TREACY—11.

*For reversal*—None.