UNITED STATES v. CERTAIN LANDS IN CITY OF ST. PAUL, MINN., et al. (CITY OF ST. PAUL, Intervener).

No. 2160.

District Court, D. Minnesota, Third Division. March 5, 1932.

Lewis L. Anderson, City Atty., of St. Paul, Minn., for City of St. Paul.

William H. Lightner, of St. Paul, Minn., for Harry T. Drake et al.

Wm. F. Hunt, Calvin Hunt, and Thomas C. Fitzpatrick, all of St. Paul, Minn., for Sophia J. Badger et al., Westcott W. Price, and Oppenheim Realty Co.

Oscar E. Holman, pro se.

SANBORN, Circuit Judge, Acting by Assignment.

It was stipulated that the issues should be submitted to the court for determination upon the pleadings in intervention, the files and records in this condemnation proceeding, upon the transcript of the proceedings instituted by the city of St. Paul for imposing an assessment upon the properties of the defendants known and designated as parcels 2 to 6, inclusive, in this proceeding, upon the record of the appeal from the judgment confirming the assessments upon said parcels entered in the district court of Ramsey county, Minn., by the defendants to the Supreme Court of the state of Minnesota, upon the charter of the city of St. Paul, and the statutes of Minnesota.

On June 14, 1929, the United States filed a petition in this court for the condemnation of certain lands in the city of St. Paul for a post office site. These lands included the parcels belonging to the defendants. The proceedings to acquire the title to these lands were conducted in accordance with the laws of the state (sections 6537 to 6578, Mason's Minnesota Statutes, 1927), as provided in title 40, §§ 256 and 258, USCA. Notice was served on all interested parties, including the city. The condemnation was granted on August 8, 1929, and commissioners were appointed to assess damages for the property taken. The commissioners were instructed to make awards in gross as to each separate parcel of land taken. Among the instructions given to the commissioners were the following:

"It would probably be impossible to specify all of the elements which must be considered in determining fair market value in every case; but it would probably be fair to say that all of those elements should be considered which would be considered in fair negotiations for a piece of land between a purchaser willing, but not compelled, to buy, and a seller willing, but not compelled to sell, in honestly arriving at fair market value. ✱ ✱ ✱

"Where there is a conflict as to the ownership of any parcel of real estate, such as a claim of title by adverse possession, a tax sale or otherwise, you will not undertake to decide that question but will merely ascertain and report the value of each parcel, irrespective of any question of title."

The commissioners ascertained and reported the value of each parcel and filed their awards on November 22, 1929. The city took an appeal from the awards on the theory that the commissioners had not included the assessments for benefits arising out of a public improvement which had been made prior to the filing of the awards. The appeal was dismissed, and the order of dismissal was affirmed in City of St. Paul v. Certain Lands (C. C. A.) 48 F.(2d) 805. The Court of Appeals held that it was clear that the city was not prejudiced by the award of the commissioners because it was more than sufficient in amount to meet the city's demands, whatever they might be.

In its complaint in intervention, which was filed on December 26, 1929, and thereafter amended, the city asserted that the defendants were the owners of lands condemned by the United States; that on April 21, 1927, the city had instituted a public improvement, which was carried through to completion; that it assessed the properties of the defendants for such improvement; that notice of application to the state district court for the confirmation of the assessments was published November 2, 1929, and that all steps required to be taken by the city had been taken; that the defendants had filed objections to the confirmation of the assessments, and that the assessments had not been confirmed; that the lands in question were increased in value in a sum equal to or in excess of the assessments levied against them; that the commissioners in the condemnation proceedings, in making their awards, had taken into consideration the enhanced value of the lands resulting from the public improvement, and had added to their awards the amount of the assessment against each parcel of land; that the government was about to pay into court the amount of the awards; that the city had expended, in connection with the improvement, over $500,000 in acquiring the lands necessary for the improvement, and that, if it was not reimbursed by the payment of assessments, a deficit in the permanent improvement revolving fund would be created; that the property in the hands of the United States was not subject to assessment; and that, if the awards were paid to the defendants, they would be unjustly enriched at the expense of the city. The city then asked for a decree impressing the funds in the hands of the United States with a lien for the amount of the assessment, declaring the city to be entitled to participate in the awards, and restraining the clerk of this court from paying the awards until the city's rights could be determined. The defendants in their answer admitted the ownership of the parcels condemned, the condemnation of them by the government, and the attempt of the city to assess their property; admitted that the property in the hands of the government could not be assessed or assessment liens enforced against it; admitted publication of the notice of confirmation of the assessments; admitted that they had objected to the confirmation of the assessments; asserted that the assessment proceedings were void; denied that the value of the property was increased by the improvement; and asked that the amended complaint in intervention be dismissed.

Before the submission of this case, and on January 30, 1931, the assessments levied against the property of the defendants were confirmed by the state district court, and the defendants, among others, took an appeal from the judgment of confirmation to the Supreme Court of Minnesota. After this case was submitted, and on January 15, 1932, the order confirming the assessments was reversed by the Supreme Court, not because the lands were not subject to assessment, but because of the way the assessment was spread. By stipulation, the decision of the Supreme Court was made a part of the record in this case.

While the record may not be entirely clear, it is my understanding that it is conceded that the improvement for which the city undertook to levy an assessment against these parcels of land was completed prior to the time that the commissioners in the condemnation proceedings made their awards; that the assessment proceedings were not completed on November 22, 1929, when the awards were filed; that the city at that time did not have any lien upon the property; and that there is not now any lien upon it.

The city's contention is that, although it held no assessment lien upon the property of the defendants at the time of the awards, it may have recourse to the funds in the hands of the clerk upon the theory that the commissioners must be presumed to have included in their awards the benefits to the property caused by the improvement. The

defendants assert that the city has no legal or equitable claim to any portion of these funds, for the reason that the title to the lands passed from them to the government as of the time when the awards were filed, and that there was not at that time any legal or equitable lien upon their property, and that the only method which the city has of collecting for any benefits caused by the improvement is the method provided by the city's charter.

It is clear that the city has had at no time a lien upon the parcels of land here involved, and that it cannot, even upon a reassessment, establish an enforceable lien against them. The only question, then, is whether, in equity, the city may have recourse to the funds in the hands of the clerk to enforce whatever claims it would have had against these lands had the title to them not passed to the United States.

As I view this case, the city had, prior to the time that the awards were filed, a right to look to these parcels of land for reimbursement to the extent of the benefits actually conferred upon them by the improvement, which right it was then and is now attempting to enforce. I am unable to see that the government, by condemning the land and substituting its value in money, deprived the city of that right. What the government did was to pay into court a sum representing the value of the lands, which must be deemed to be the amount which the owners would have been entitled to had the city not made the improvement, plus whatever added value there was resulting from the improvement. The owners of the parcels in question are not injured if they receive the amount for their lands which they would have received if no improvement had been made. Had the city completed its assessment proceedings before condemnation, it is fair to assume that the awards would have been the same, and, before the owners could have received their compensation, the assessments would have been deducted. To refuse the city the right to collect out of the fund the amount which was included because of the increase in value of the property caused by the improvement would not only result in the owners' receiving more than just compensation, but would mean that the proportion of the expense of the improvement which should be allocated to these lands would have to be paid by other benefited property owners or borne by the taxpayers of the city generally. There would certainly be nothing inequitable in requiring these defendants, who have turned their real estate into cash, to pay what they would have had to pay if their property had not been taken and what, presumptively at least, does not belong to them, but is attributable to the money expended by the city for the improvement.

I realize that the question of the right of the city to have recourse to the funds in the hands of the clerk is, under the circumstances, a doubtful one, and the only case which is similar and which appears to sustain my views is the case of Bowers v. Town of Bloomfield, 81 N. J. Eq. 163, 86 A. 428, 45 L. R. A. (N. S.) 451. In that case the improvements were not only completed before the final award, but the assessments were also completed, and it further appears that the improvement was made at the request of the property owners who were assessed, so that there are distinguishing features. However, in that case, the court said: "Here the improvements were made at the time the petition was filed; the increased value of the land therefrom had already accrued and must be presumed to have been embraced in the award; there is no suggestion that the value due to the betterments had increased between that date and the date of the assessments, nor that the amount of the assessments exceeded the amount of the accrued benefit at the date of filing the petition in condemnation."

The court also said: "The award represents in a lump sum the total value of the land, including the interest of every one therein; and, where there are diverse interests, the statute provides that the money may be paid into the Court of Chancery, to be distributed according to law. The duty thus imposed upon the Chancellor makes it necessary for him to ascertain the amount of the just compensation for each interest."

Courts of equity have frequently, in the interests of justice, created a lien or charge where there was none at law, have refused to allow one person what in equity and in good conscience belonged to another, and have treated the proceeds of real property as the property itself when that was necessary to prevent injustice.

It seems to me that the important considerations are that the lands were subject to assessment at the time of condemnation, that the improvement was completed, and that whatever benefits grew out of the improvement had attached to the lands and had been considered by the commissioners in making their awards. It is impossible at this time to determine what proportion of the awards

the city is entitled to, since its claims against the several parcels are still unliquidated.

Finding the facts and the law to be as I have stated them herein, I reach the conclusion that the city has a right to have recourse to the funds in the hands of the clerk to the same extent as it might have had recourse against the lands for which the funds were substituted, and is entitled to a decree that, until its rights are determined or until the further order of the court, the clerk be enjoined from distributing the funds. Such a decree may be prepared by the city attorney and presented to the court.

The court will retain jurisdiction to take such further proceedings or to make such further orders or decree with respect to the distribution of the funds as may be necessary, and a provision to that effect will be included in the decree.