104 N.J. Super. 394 (1969)
250 A.2d 150
JALA CORPORATION, A CORPORATION OF THE STATE OF NEW JERSEY, JACK SALL, THEODORE SALL, CARL GELMAN AND JEROME J. GELMAN, AS THEIR INTERESTS MAY APPEAR, PLAINTIFFS-RESPONDENTS,
v.
BERKELEY SAVINGS AND LOAN ASSOCIATION OF NEWARK, NEW JERSEY, DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Argued January 13, 1969.
Decided February 6, 1969.
*395 Before Judges CONFORD, KILKENNY and LEONARD.
Mr. Herman Fast argued the cause for appellant (Messrs. Fast & Fast, attorneys).
Mr. Paul Seligman argued the cause for respondents (Messrs. Gelman and Gelman, attorneys).
*396 The opinion of the court was delivered by LEONARD, J.A.D.
After a trial without jury defendant appeals from a judgment entered against it in the sum of $2,820.30 plus interest and costs.
The stipulated facts follow: On March 6, 1964 plaintiff corporation purchased a certain tract of land located in Newark, upon which there was erected a four-story apartment house. In order to finance this purchase plaintiffs gave defendant a mortgage and promissory note in the amount of $100,000, to run for a 20-year term at 6% interest.
During December 1966 the State of New Jersey, by the Commissioner of Transportation (State), filed a verified complaint in the Superior Court, Law Division, Essex County, whereby it sought to condemn the mortgaged property for state highway purposes. Plaintiffs and defendant herein, among others, were made parties defendant to that action. On or about December 22, 1966 the State filed a declaration of taking of the property, wherein it stated that "just compensation for the taking is $152,500." On December 28, 1966 the State deposited said sum with the Clerk of the Superior Court.
By letter dated December 29, 1966 the State advised plaintiffs and defendant of the aforesaid deposit and their right to make application for the withdrawal thereof. Thereafter, during February 1967 plaintiffs made application to the court for distribution of the funds deposited. Their attorney prepared and sent to all interested parties, including defendant, a form of consent order for signature. At that time, plaintiffs' and defendant's attorneys had a telephone conversation in which the latter stated that his client would not sign the order unless plaintiffs guaranteed full payment of its lien out of the disbursed funds. This was agreed to and the attorneys further agreed that the distribution check would be endorsed by plaintiffs and forwarded to defendant's attorneys so that all liens would be paid therefrom prior to disbursement to plaintiffs. This understanding was confirmed by a letter dated February 10, 1967. Pursuant to this arrangement, all *397 parties, including defendant, signed a consent order giving the State the right to enter and take possession of the property and authorizing the Clerk to pay $152,500 to plaintiffs. Thereafter a check was issued by the Superior Court to plaintiffs, which they endorsed and forwarded to defendant's attorneys on March 3, 1967.
On or about March 10, 1967 defendant made distribution of the fund. Defendant retained $95,634.37. (Plaintiffs had made the required monthly payments of principal and interest from the original date of the mortgage until the taking by the State.) It paid the second mortgagee the full amount due him, retained $2,000 in escrow for taxes (subsequently paid to plaintiffs) and sent to plaintiffs the sum of $40,445.60. Included in the sum retained by defendant was $470.05 for one month's interest until the date of payment.
Also included in the funds so retained was the sum of $2,820.30 as a prepayment charge levied against plaintiffs, which defendant asserted it was entitled to collect by reason of the following clause contained in the mortgage:
"It is further understood and agreed that the mortgagors shall have the further right and privilege to make payment of the unpaid balance hereof at any time during the first 5 years of the term hereof, provided there is paid in addition to the amount due hereunder for principal and interest a sum equal to six months' interest computed on the unpaid balance of said mortgage as a prepayment privilege fee."
Plaintiffs do not dispute any portion of the distribution made by defendant except its retention of the prepayment charge. When defendant refused to remit this sum they instituted the present action to recover $2,820.30. Following a nonjury trial, upon agreed facts, the trial court entered judgment in favor of plaintiffs and against defendant.
Defendant first contends that it is entitled to the benefit of its executed contract, absolute in its terms, and that the trial court erred in creating an exception that the parties *398 themselves did not include. Defendant argues that through the use of the above-recited prepayment clause the parties agreed that defendant's funds would remain invested for a period of at least five years. To safeguard this investment it was further agreed that in the event plaintiffs desired to prepay the mortgage during that period they would have to pay the prepayment charge therein set forth. Defendant thus asserts that since the contract does not provide that the prepayment clause was to be ineffective in the event of a taking by eminent domain, the trial court's determination was inequitable.
On the other hand, plaintiffs assert that the prepayment clause is not applicable to the instant situation because they did not voluntarily exercise any "right" or "privilege" within the meaning of that clause but were required by operation of law to prepay the mortgage.
Preliminarily, it is to be noted that plaintiffs do not challenge the validity of a prepayment clause such as contained in the instant mortgage. The controversy specifically involves the application of the clause, which contained no express provision for the contingency of condemnation of the premises by the State for public use, to a situation where the premises were so condemned within the time period during which the clause calls for a prepayment fee. The issue is novel in this State.
However, the precise question was before the court in Associated Schools, Inc. v. Dade County, 209 So.2d 489 (Fla. D. Ct. App. 1968), wherein it was held that the mortgagee was not entitled to prepayment penalties but only to the return of its principal and interest accrued until the date of distribution of the proceeds of the condemnation funds. In reaching that conclusion the court relied upon a prior decision of the Supreme Court of Florida, Shavers v. Duval County, 73 So.2d 684 (1954).
In Shavers the property owned by the mortgagor was taken by eminent domain proceedings and the mortgagee demanded interest for the full period of the mortgage. The court denied *399 the mortgagee's demand and allowed the mortgagee only accrued interest to the date of the distribution of the condemnation funds. The court said:
"* * * it is urged by the mortgagee that the mortgage note of which it is the owner specifically states that the note is secured by a mortgage and is subject to all of the covenants contained therein; that the mortgage and note do not contain a stipulation according to the maker the privilege of prepayment; that under the terms of their agreement the mortgagors contracted to pay the principal plus the interest according to the tenor and terms of the mortgage and note for the full period of the mortgage; and that to require the mortgagee to accept less than full interest up to the maturity date of the note and mortgage would amount to an impairment of the obligation of the contract in violation of the State and Federal Constitutions." (at p. 688)

* * * * * * * *
"The protection against the impairment of the obligation of the contract is no greater than other guarantees contained in the Constitution * * *. These freedoms and rights are not absolute  each of them is subject to lawful restraints and limitations. * * * Absolute freedom and liberty to own or acquire property would ignore the police power which restrains the use of property and the other right of eminent domain by which private property is acquired for public use. There is no such thing under our constitutional system of government as absolute liberty or freedom, without limitation and restraint." (at pp. 689-690; emphasis added)

* * * * * * * *
"It would be unfair and contrary to the principles of equity and good conscience for the mortgagee to have the principal of the note and the free use and enjoyment thereof and at the same time require the mortgagor or the condemnor to pay it interest on that same principal for no other reason than that a naked legal provision of the note and mortgage, at the time it was executed, required that the mortgagor should do so." (at p. 691)

* * * * * * * *
"Even though the security for the payment of its note is changed by operation of law, there has been no impairment of its contract. Full value for the land taken has been paid. It [the mortgagee] must look to the money instead of the real estate. Such terms and conditions were not provided for in the mortgage deed but all the provisions of the Constitution and the Statutes existing at the time the mortgage and note were executed were a part of the contract and it knew that such a change in the contract might be brought about by reason of eminent domain proceedings, as provided for under the law. If this constituted an impairment of the obligation of the contract, then the impairment was provided for in the Constitution and the laws." (at p. 692; emphasis added)
*400 Another case of persuasive influence is Chestnut Corp. v. Bankers Bond & Mortgage Co., 395 Pa. 153, 149 A.2d 48, 70 A.L.R.2d 1331 (Sup. Ct. 1959). In that case a rider attached to a long-term bond and mortgage stipulated that the mortgagor should have the right to prepay the entire principal debt during the third, fourth and fifth years of the term, provided that there should also be paid accrued interest to the date of payment and in addition a sum equal to 2% of the amount of principal so paid. Two years and some eight months after the execution of the mortgage the building on the premises was completely destroyed by fire. The building had been insured against loss by fire, with the proceeds payable to the parties as their interest might appear. Thus, the insurance company paid the mortgagee its principal debt, accrued interest and in addition a sum of $5,491.31, representing 2% consideration for prepayment of the principal mortgage debt. The court, in holding that the mortgagee was not entitled to the prepayment bonus or penalty, said:
"The mortgagee was paid the entire unpaid principal balance of the mortgage plus accrued interest not because of any desire on the part of the plaintiff to prepay the debt, nor in compliance with the exact terms of the Rider, but solely because of the fire and the provisions with respect thereto in the fire insurance policies. * * *
Neither the bond nor the mortgage specifically or expressly provides for the exact situation which has arisen, namely, a prepayment of the entire principal loan with interest during the premium period, due not to a voluntary election of prepayment but to a fire. If defendant (the obligee-mortgagee) believed it should be entitled to the premium under these circumstances it could easily and should have so provided in the bond and/or mortgage. In the absence of such a provision we believe that defendant who received the entire unpaid principal and accrued interest of its mortgage is not entitled to the prepayment premium."
We agree with the logic of and the conclusions reached in the three above-cited cases, and we regard the analogy of the Pennsylvania case as pertinent to the present situation. Thus, in the instant case we find that plaintiffs did not voluntarily exercise any "right" or "privilege" to *401 prepay the unpaid balance of the mortgage, as was contemplated by the prepayment clause contained in the mortgage. Rather, the mortgagee was prepaid by reason of the fact that the State pursuant to its paramount right of eminent domain took the property for public use. As a result of this action by the State the mortgagor's fee interest in the premises and the mortgagee's lien thereon were destroyed, and by operation of law both were transmuted to a present right to the funds deposited by the State with the clerk of the court. We cannot construe the language of the prepayment clause to make it applicable to the instant situation. Rather, we hold that the parties in inserting this clause did not contemplate a taking of the premises by eminent domain. As was said in Chestnut Corp., supra, "If defendant (the obligee-mortgagee) believed it should be entitled to the premium under these circumstances it could easily and should have so provided in the bond and/or mortgage. In the absence of such a provision we believe that defendant who received the entire unpaid principal and accrued interest of its mortgage is not entitled to the prepayment premium."
Defendant's argument that plaintiffs exercised "the right and privilege" of prepayment by making application for and by withdrawing the funds from court is without merit. The record indicates that although the application for withdrawal was made by plaintiffs as the record owners of the premises, the funds were actually withdrawn by the joint efforts of plaintiffs and defendant. Pursuant to prior arrangements, defendant signed the consent order for payment of the funds; the State's draft received by plaintiffs was immediately endorsed to the order of defendant. Defendant then cleared it and made distribution of the proceeds thereof and promptly cancelled its mortgage. Since the State required payment and discharge of defendant's lien as a prerequisite to the withdrawal of its deposit, these funds would not have been paid without defendant's consent.
Pierce County v. King, 47 Wash.2d 328, 287 P.2d 316 (Sup. Ct. 1955), relied upon by defendant, is inapposite. *402 That case involved a vendor-vendee relationship under an executory land contract. Further, the contract did not contain a prepayment clause and the vendors were only claiming interest "for the remaining life of the contract." In any event, it is worthy of note that the court therein by way of final determination gave the vendors the election of (a) taking the balance of the purchase price (which was on deposit with the registry of the court) "in a lump sum, and no more" or (b) leaving such sum in the registry together with the disputed interest, and being paid monthly principal and interest installments in accordance with the terms of the contract, until the entire sum on deposit was thus disbursed.
For the respective rights of a vendor and a vendee where premises that are under an executory contract of sale are taken by eminent domain, see State v. New Jersey Zinc Co., 40 N.J. 560 (1963); Delancey & Stockton Corp. v. Reliable & Co., 134 N.J. Eq. 71 (E. & A. 1943); Von Waldheim v. Englewood Heights Estates, Inc., 115 N.J.L. 220 (E. & A. 1935); Hartman v. Church Construction Co., 101 N.J. Eq. 512 (Ch. Div. 1927).
Defendant next contends that the prepayment charge may be considered as a loss incidental to the condemnation proceedings and therefore plaintiffs could have recovered the amount thereof from the State as part of their just compensation. This point is frivolous. When premises are taken by eminent domain the owner thereof is entitled to be paid "the fair market value" thereof. Trenton v. Lenzner, 16 N.J. 465, 475-476 (1954). A prepayment charge as here claimed is not a factor to be considered in arriving at fair value nor is it an element of damage incidental to the taking. Knoxville Housing Authority, Inc. v. Bush, 56 Tenn. App. 464, 408 S.W.2d 407 (Ct. App. 1966).
Those having interest in the property less than ownership or claims arising by reason of the condemnation can only be compensated by appropriate division of the fund thereby created, to the extent to which they are entitled. *403 Such claimants may not receive separate and additional compensation. State v. New Jersey Zinc Co., supra, 40 N.J., at p. 574. To allow plaintiffs this additional sum for the purpose of paying it over to defendant as a prepayment fee would be indirectly allowing defendant separate compensation above the fair value of the property.
Judgment affirmed.