775 A.2d 174 (2001)
CITY OF ORANGE TOWNSHIP, a municipal corporation of New Jersey, Plaintiff,
v.
EMPIRE MORTGAGE SERVICES, INC., a corporation of New Jersey; N.J. Division Of Motor Vehicle Services; Ron Tooks and Roxanne Tooks Ely; M. Collymore; R. Mercurius; Yvette Washington; Shanitta Lawson and Alex M. Lawson, Defendants, and
Nwakozoh Remi Okafor, Defendant-Appellant/Cross-Respondent,
IMC Mortgage Company, a Florida corporation, Defendant-Respondent/Cross-Appellant.
Superior Court of New Jersey, Appellate Division.
Submitted May 22, 2001.
Decided June 15, 2001.
*175 Appellant/cross-respondent filed a pro se brief.
Salvatore L. Borrelli, West Peterson, attorney for respondent/cross-appellant.
Before Judges PRESSLER, KESTIN and ALLEY.
The opinion of the court was delivered by ALLEY, J.A.D.
The City of Orange condemned real property owned by appellant/cross-respondent Nwakozoh Remi Okafor (Okafor) and deposited the condemnation proceeds into court. IMC Mortgage Company (IMC), the holder of the mortgage on the property, contends that Okafor, as mortgagor, was obligated under the mortgage note to make mortgage payments to IMC at the stated interest rate of 13.5 percent after the condemnation proceeds were deposited into court. Okafor contends that the making of the deposit, the amount of which was more than sufficient to pay the principal balance he owed, triggered a duty on the part of IMC to withdraw the funds, thus satisfying Okafor's obligation to IMC under the mortgage. The funds on deposit *176 with the court earned interest at the rate of 5.5 percent. Okafor appeals from a Law Division order requiring him to pay IMC on the mortgage note, at an interest rate specified therein of 13.5 percent, for the period after the condemnation proceeds were deposited with the court and available to be withdrawn. We reverse.
The core facts are straightforward. Okafor owned residential real property in Orange, and on August 1, 1996, he entered into a mortgage transaction as mortgagor with Empire Mortgage Services (Empire) as mortgagee by executing a mortgage note for $50,000 and a mortgage to secure the loan. The note required Okafor to make interest payments of 13.5 percent per year. Empire remained actively in the picture for but a brief time, assigning its rights to IMC later that month on August 28, 1996.
Orange filed its condemnation complaint with respect to Okafor's property on September 18, 1998, and it also filed and recorded a declaration of taking in which it estimated just compensation for the taking to be $50,000. On October 7, 1998, pursuant to an order of the court, Orange deposited the $50,000 in estimated compensation with the Clerk. As of the date of the deposit, the unpaid principal balance of the mortgage was $47,499.56. On November 6, 1998, Orange amended its complaint to join IMC as an additional defendant.
Three commissioners were appointed to examine and appraise the property. Their report, dated February 24, 1999, increased the award by $25,000 to $75,000. On June 25, 1999, Assignment Judge Alvin Weiss entered an order for final judgment confirming the commissioners' award as just compensation and directing that the balance of the award be deposited with the Clerk. The funds deposited with the Clerk were to earn 5.5 percent interest. See R. 4:57-1 to -3 and R. 4:42-11(a). Orange then deposited the remaining $25,000 with the court and on September 16, 1999, issued a notice of deposit of final judgment proceeds. Orange gave notice of the deposit to all interested parties, including IMC.
Not until January 19, 2000, did IMC move for an order seeking payment to it of funds from the condemnation proceeds on deposit with the court. It sought $61,750.03, and Okafor filed a cross-motion seeking an order directing the Clerk to pay him all of the funds held in deposit. A Law Division judge entered an order on April 24, 2000, authorizing the release to IMC of the balance allegedly then due and owing on its mortgage, namely $47,499.56 in principal and $14,845.76 in interest and alleged delinquency and other charges, for a total of $62,345.32. Okafor allegedly had not made payments to IMC since about September 10, 1998, shortly before Orange had deposited the initial $50,000 estimated compensation payment with the court.

I
The principles of condemnation of private property for just compensation were outlined recently by our Supreme Court in Township of West Windsor v. Nierenberg, 150 N.J. 111, 125-26, 695 A.2d 1344 (1997):
When private property is condemned for public use, the condemnor is required to pay "just compensation" to the property owner. U.S. Const. amend. V; N.J. Const. art. I, ¶20. The previous landowner is entitled to that amount of money that will make him whole. See, e.g., Bowers v. Town of Bloomfield, 81 N.J. Eq. 163, 165, 86 A. 428 (E. & A. 1913); Port of New York Auth. v. Howell, 59 N.J.Super. 343, 347, 157 A.2d 731 (Law Div.1960), aff'd, 68 N.J.Super. 559, 173 A.2d 310 (App.Div.), certif. denied, 36 N.J. 144, 174 A.2d 927 (1961). *177 Eminent domain proceedings are therefore required to produce a "fair market value" for the subject parcel. State v. Gorga, 26 N.J. 113, 115, 138 A.2d 833 (1958); State v. Cooper, 24 N.J. 261, 268, 131 A.2d 756, cert. denied, 355 U.S. 829, 78 S.Ct. 41, 2 L.Ed.2d 42 (1957).
Condemnation procedures are set forth in the Eminent Domain Act of 1971, N.J.S.A. 20:3-1 to -50(Act), and in R. 4:73-1 to -11. Under the Act, "title to property condemned and acquired by the condemnor... [is] in fee simple, free and discharged of all right, title, interest and liens of all condemnees...." N.J.S.A. 20:3-20. IMC was promptly joined in this case by an amendment to the complaint, and indeed, when mortgaged land is the subject of the condemnation, all mortgage holders must be joined as defendants. Roger A. Cunningham & Saul Tischler, 29 New Jersey Practice: Law of Mortgages § 165 at 760 (1975); R. 4:73-2(a).
With regard to the interests of a mortgagor and mortgagee,
the condemnation award is a substitute for the land when all or part of the mortgaged land is taken for public use. Thus the lien of the mortgage attaches to the condemnation award. If the entire property subject to the mortgage is condemned, the mortgagee is entitled to the entire award, or so much of it as necessary to satisfy the mortgage debt, even if the debt has not matured.
Cunningham and Tischler, supra, § 165 at 761; see also 6 Nichols on Eminent Domain § 5.18 at 246 (Sackman ed., 3d ed.1989). New Jersey law appears to conform to the general rule as set forth in Restatement (Third) of Property, Mortgages, § 4.7 (1996):
(a) Unless a different disposition is provided in the mortgage, the mortgagee has a right to the following funds paid on account of loss ... to the mortgaged real estate, to the extent that the mortgagee's security has been impaired by the loss ... (2) an award resulting from a taking of all or part of the real estate under power of eminent domain....[1]
As explained in the Reporters' Note to § 4.7 of the Restatement, Comment b at 295:
The majority view holds that the mortgagee may exercise its equitable claim to the funds under discussion by taking them in their entirety, up to the full amount of the debt, irrespective of any measure of impairment of security. In eminent domain cases, see, e.g., City of Chicago v. Salinger, 384 Ill. 515, 52 N.E.2d 184 (1943); In re Dillman, 276 Mich. 252, 267 N.W. 623 (1936); In re Forman, 138 Misc. 502, 240 N.Y.S. 718 (N.Y.Sup.Ct.1930), noted 44 Harv. L.Rev. 1142 (1931).
In this case, Orange followed the Act's requirement that an entity seeking the property must file a declaration of taking and must simultaneously deposit with the Clerk the amount of estimated compensation. N.J.S.A. 20:3-18; see also R. 4:73-9(a). Interest runs on the award "from the date of the commencement of the action until the date of payment of compensation[.]" Casino Reinvestment Dev. Auth. v. Hauck, 162 N.J. 576, 578, 745 A.2d 1163 (2000); N.J.S.A. 20:3-31. The Act further provides that in the meantime, *178 [u]pon application of any condemnee, or any other party in interest, and on notice to all parties to the action, including the condemnor, the court may direct that the estimated compensation on deposit, or any part thereof, be paid to the person or persons entitled thereto, on account of the compensation to which they may be entitled in the action.... [N.J.S.A. 20:3-23; see also R. 4:73-9(c); Jala Corp. v. Berkeley Sav. and Loan Ass'n, 104 N.J.Super. 394, 401, 250 A.2d 150 (App.Div.1969).]
This means that either the mortgagor or the mortgagee can apply for withdrawal of funds on deposit. See Jala, supra, at 401, 250 A.2d 150. Jala has been cited in several jurisdictions for its holding that a condemnation award did not constitute a prepayment triggering a mortgagor's obligation to pay a prepayment penalty to the mortgagee. See, for example, Village of Rosemont v. Maywood-Proviso State Bank, 149 Ill.App.3d 1087, 1091, 103 Ill.Dec. 542, 501 N.E 2d 859, 861 (1986). Jala's reasoning is significant here as well. There, as in this case, a governmental entity condemned property subject to a mortgage and deposited into court an estimated amount of just compensation that exceeded the outstanding mortgage note balance. 104 N.J.Super. at 396, 250 A.2d 150. Judge Leonard, whose opinion was joined by Judges Conford and Kilkenny, held that
plaintiffs did not voluntarily exercise any `right' or `privilege' to prepay the unpaid balance of the mortgage, as was contemplated by the prepayment clause contained in the mortgage. Rather, the mortgagee was prepaid by reason of the fact that the State pursuant to its paramount right of eminent domain took the property for public use. As a result of this action by the State the mortgagor's fee interest in the premises and the mortgagee's lien thereon were destroyed, and by operation of law both were transmuted to a present right to the funds deposited by the State with the clerk of the court.[2]

[104 N.J.Super. at 400-01, 250 A.2d 150.]

II
It requires no great commercial sophistication to grasp that, if all other things were equal, in a dispute such as the one presented by this appeal a mortgagee would have a strong incentive to inaction: continued payment of mortgage interest at 13.5 percent, late charges, and other penalties, in lieu of 5.5 percent earned on the condemnation proceeds deposited in court. On appeal, Okafor admits that he is responsible for the principal due in the amount of $47,499.56, and he does not object to the payment of interest in the amount of 5.5 percent. He contends, however, that if the April 24, 2000 order is not modified, IMC will be unjustly enriched, as it waited for what he says was seventeen months to request withdrawal and would, if it prevailed, be paid interest of 13.5 percent, plus penalties. In its cross-appeal, IMC asks that the April 24, 2000 *179 order be modified to provide for payment of per diem interest through this appeal.
It was open to the mortgagor, Okafor, from the time the funds deposited with the clerk were available, to seek to have them applied to pay the mortgagee. But it was equally open to IMC, the mortgagee, to apply for the monies to be paid to it. N.J.S.A. 20:3-23; R. 4:73-9(c); Jala, supra, 104 N.J.Super., supra, at 401, 250 A.2d 150. Unlike Jala, the documents for the loan to Okafor did not call for a prepayment penalty, but the difference does not diminish Jala's significance here. Thus, the question is which party must bear the difference in interest rates, and we look to their agreement for the answer. Here, the agreement is represented in particular by the language of the mortgage, which contained a "Condemnation" section. We quote the relevant portion:
The proceeds of any award or claim for damages, direct or consequential, in connection with any condemnation or other taking of any part of the Property, or for conveyance in lieu of condemnation, are hereby assigned and shall be paid to Lender.
In the event of a total taking of the Property, the proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with any excess paid to Borrower.
The terms of the mortgage obviously deal expressly with the very situation that arose, namely, a total taking of the property in condemnation, and our decisional guideposts are well-settled principles of contractual interpretation. In Karl's Sales and Service, Inc. v. Gimbel Bros., Inc., 249 N.J.Super. 487, 493, 592 A.2d 647 (App.Div.), certif. denied, 127 N.J. 548, 606 A.2d 362 (1991), we cautioned that:
where the terms of a contract are clear and unambiguous there is no room for interpretation or construction and the courts must enforce those terms as written. Kampf v. Franklin Life Ins. Co., 33 N.J. 36, 43, 161 A.2d 717 (1960); Levison v. Weintraub, 215 N.J.Super. 273, 276, 521 A.2d 909 (App.Div.), certif. denied, 107 N.J. 650, 527 A.2d 470 (1987). The court has no right "to rewrite the contract merely because one might conclude that it might well have been functionally desirable to draft it differently." Id.; Brick Tp. Mun. Util. Auth. v. Diversified R.B. & T., 171 N.J.Super. 397, 402, 409 A.2d 806 (App.Div.1979). Nor may the courts remake a better contract for the parties than they themselves have seen fit to enter into, or to alter it for the benefit of one party and to the detriment of the other. James v. Federal Ins. Co., 5 N.J. 21, 24, 73 A.2d 720 (1950).
See also Great Atlantic & Pacific Tea Co., Inc. v. Checchio, 335 N.J.Super. 495, 501, 762 A.2d 1057 (App.Div.2000); Loigman v. Township Committee of the Tp. of Middletown, 297 N.J.Super. 287, 301, 687 A.2d 1091 (App.Div.1997).
When condensed to meet the circumstances that occurred, the specific terms of the mortgage instrument are as follows:
The proceeds of any award ... in connection with any condemnation ... of the Property, ... are hereby assigned and shall be paid to Lender [IMC, as successor to Empire]. In the event of a total taking of the Property, the proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with any excess paid to Borrower [Okafor].[3] *180 As events in this case actually played out, there was a condemnation, and under this provision the proceeds belonged to and were to "be paid to Lender." There was a "total taking," which resulted in an "excess." Under the Condemnation section of the mortgage, it was expressly agreed that "the proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with any excess paid to Borrower." (Emphasis added).
The mortgage's "Condemnation" provision, as we see it, relieves the mortgagor from his obligation to make payment after the condemnation award is paid into court and the funds are available for withdrawal by the mortgagee or its successor. Certainly, the mortgagee is entitled to notice that the award has been deposited, but in this case there is no question that IMC had been joined as a party and knew about the condemnation proceedings and the deposits into court at all times material to this appeal. The condemnation award, under the terms of the mortgage, was more than a mere substitute for the real property as continuing security for the debt. The award actually constituted nothing less than a tender of payment to the mortgagee which it was not at liberty to ignore. The mortgage gave IMC no right to sit back, as time ran on, expecting the borrower to pay not only interest at a rate 8 percent higher than the funds on deposit were earning which the mortgagee was entitled to withdraw, but also late charges and penalties.[4]
The plain language of the mortgage's "Condemnation" section, then, operates as follows. When condemnation proceeds are on deposit and are available to be withdrawn by the mortgagee, the principal amount of the mortgage loan is thereby immediately deemed paid. Furthermore, if the amount thus available is not then sufficient to pay the principal amount completely, if, for example, the amount deposited is insufficient, or if the deposit is subject to conflicting interests in the funds asserted by other claimants, the principal amount is reduced by the amount then withdrawable by the mortgagee, and later by further amounts to the extent they become so withdrawable thereafter.
In our view, then, it remained the obligation of the mortgagor to continue making interest payments only until the funds were paid into court and made available for withdrawal. After that, the condemnation proceeds belonged to the mortgagee, IMC, to the extent they were needed to pay IMC. Because there was a total taking and even the initial $50,000 of the award paid into court exceeded the amount of the mortgage principal, on the present facts no interest or unpaid principal should accrue under the mortgage note after the proceeds became available to the mortgagee in accordance with its rights under the mortgage's "Condemnation" provision. Orange's condemnation of the property did not operate merely as a trigger to a prepayment option by the borrower. See Jala, supra, 104 N.J.Super., at 401, 250 A.2d 150. Under the mortgage's provision, the borrower had no option, payment *181 was mandated, and IMC was unconditionally entitled to the funds.
Our conclusions proceed from the premise that the quoted mortgage provision is clear and unambiguous. Even if there were an ambiguity, however, the mortgage plainly should be construed against IMC inasmuch as it is a form contract prepared by the "Lender," which was IMC's predecessor in interest, Empire. As we stated in Karl's Sales and Service, supra, 249 N.J.Super. at 493, 592 A.2d 647, "where an ambiguity appears in a written agreement, the writing is to be strictly construed against the party preparing it. See In re Miller's Estate, 90 N.J. 210, 221, 447 A.2d 549 (1982); Liqui-Box v. Estate of Elkman, 238 N.J.Super. 588, 599, 570 A.2d 472 (App.Div.1990)."
It is wise to remember, in the words of the Supreme Court in Tessmar v. Grosner, 23 N.J. 193, 201, 128 A.2d 467 (1957), that:
[i]n the quest for the common intention of the parties to a contract the court must consider the relations of the parties, the attendant circumstances, and the objects they were trying to attain. An agreement must be construed in the context of the circumstances under which it was entered into and it must be accorded a rational meaning in keeping with the express general purpose.
The object of the mortgage provision under scrutiny was to give the lender the unfettered right to condemnation proceeds. The language of the "Condemnation" section of the mortgage granted that right and placed no reservation on it. Once the taking occurred and an award in excess of the principal owed was paid, the object of the mortgage transaction had been fulfilled: the borrower had received a loan and given security for it, and the lender had given a loan and been tendered repayment because the security no longer existed. No rights of possession or enjoyment of the property remained, and there were no issues of foreclosure or redemption. In short, the traditional interests of mortgagor and mortgagee with respect to real property were extinguished. All that remained was money, to be divided between the parties as they had agreed. In these circumstances, not only would it be inequitable and unfair for a mortgagee in IMC's position to defer collection of the proceeds and to keep collecting interest at a rate 8 percent higher than the award was earning in the hands of the court, it would be plainly inconsistent with the parties' agreement as well. And if the mortgagee had no greedy motive, but merely slept on its right to get the money out of court, its own lack of diligence should not serve to shift the costs of its inaction to the borrower.[5]
Upon IMC's joinder in the case on November 8, 1998, $50,000 already had been on deposit with the court since October 7, 1998, and there was no impediment to IMC applying for withdrawing the portion thereof that would satisfy the unpaid principal. It is clear, as we have already observed, that a mortgagee need not wait for final judgment before making such an application. Granted, because IMC had *182 not been a party until November 8, 1998, and because we are not satisfied that the record contains any competent proof that it was aware of the deposit before its joinder, IMC needed a reasonable period to prepare the application for withdrawal of the funds on deposit and to obtain a decision thereon. We see no reason why IMC would have needed more than forty-five days, or until December 21, 1998, to accomplish this. It would be contrary to the agreement, to a conspicuous and unjust extent, for IMC to collect interest at the higher rate thereafter under the analysis we have already set forth. Okafor's obligation to pay under the mortgage note thus terminated as of December 21, 1998, and IMC is not entitled to any interest, late charges, or other delinquency fees allegedly accruing for nonpayment after that date.
In the circumstances, IMC's cross-appeal seeking an award of further interest and late charges is plainly without merit. Our disposition of this appeal makes it unnecessary for us to determine the issues raised by Okafor's contention that he was denied a hearing when the Law Division judge entertained the application leading to the order now before us on this appeal.

III
Accordingly, the order appealed from is reversed. We remand to the Law Division for the entry of an order, after a hearing on notice to the parties, determining the balance of principal and interest due from Okafor to IMC as of December 21, 1998, which is forty-five days after IMC's joinder in this action on November 6, 1998. The cross-appeal is denied. We do not retain jurisdiction.
NOTES
[1] The Restatement further notes in Comment b to § 4.7, at 288:

The mortgagee's right to recover the funds described here is subject to modification in the mortgage itself. The mortgage may provide for a lesser recovery, or none at all; alternatively, it may provide for a complete recovery of the funds, even though a smaller recovery would fully cure the impairment of security....
[2] One commentator who has cited Jala notes,

When property which is security for a mortgage is taken in an eminent domain proceeding,. . . the majority of cases have held that the creditor is entitled to a portion of the condemnation proceeds [citing Jala ].... [E]ven where the debt was not due under the terms of the note, courts have permitted the creditor to insist upon, and receive, the full amount of the condemnation award towards immediate reduction of the debt.
[Frank S. Alexander, Mortgage Prepayment: the Trial of Common Sense 72 Cornell L.Rev. 288, 319-20 (January 1987).]
[3] The present mortgage's "Condemnation" provision appears not to be unusual. It is similar to Fannie Mae/Freddie Mac Uniform Instrument Multistate Riders for Single Family Dwellings, Forms 3150 and 3140 (Planned Unit Development and Condominium Riders) which are cited in Roger A. Cunningham & Saul Tischler, 29 New Jersey Practice: Law of Mortgages § 165 (Myron C. Weinstein Supp.2000 at 196-97). In addition, its "total taking" language is virtually identical to that of a mortgage quoted in Charter One Bank, F.S.B. v. Kaigler, 2001 WL 193245 (Ohio App.Ct.2001).
[4] We deal with this issue, of course, in a factual setting in which no appeal has been taken in the condemnation proceeding and it is thus a summary proceeding pursuant to R. 4:67 and R. 4:73-1.
[5] Although the specific basis for our reasoning in this appeal is the express language of the mortgage note, we do not preclude a similar result even in the absence of such language. Indeed, we acknowledge that a cogent argument for such an outcome might flow from, among other things, what is suggested by the material from Jala Corp. v. Berkeley Savs. and Loan Ass'n, supra, 104 N.J.Super. 394, 250 A.2d 150 and the Restatement (Third) of Property, Mortgages, § 4.7 (1996) to which we have referred above. We do not pursue that line of inquiry to conclusion in this case, however, due to the express language of the mortgage note upon which our holding in this case rests.