**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-2025-24

D & M STEEL CORPORATION,

    Plaintiff-Appellant,

v.

TAMARA MARTINEZ-OLIVEIRA,
a/k/a TAMARA MARTINEZ and
TAMARA OLIVEIRA, TD BANK,
NA, MARC A. ROSENKRANTZ
and SCHECHNER LIFSON
CORPORATION,[1]

    Defendants,

and

SCHECHNER LIFSON
CORPORATION and MARC A.
ROSENKRANTZ,

    Third-Party Plaintiffs,

v.

---

[1] The Notice of Appeal and court orders identify defendant as Shechner Lifson Corporation. The correct spelling of the party's name appears in the caption and is used throughout the opinion.

VIREN MANIAR and VIREN
MANIAR CPA LLC,

    Third-Party Defendants-
    Respondents.

_____

Argued May 12, 2026 – Decided June 29, 2026

Before Judges Susswein and Augostini.

On appeal from the Superior Court of New Jersey, Law
Division, Essex County, Docket No. L-4929-20.

Gregg S. Sodini argued the cause for appellant (Cutolo
Barros LLC, attorneys; Gregg S. Sodini, on the briefs).

Meredith K. Stoma argued the cause for respondents
(Lewis Brisbois Bisgaard & Smith LLP, attorneys;
Meredith K. Stoma, of counsel and on the brief;
Anthony A. Doss, on the brief).

PER CURIAM

Plaintiff D & M Steel Corporation appeals from an April 25, 2025 order

granting defendants and third-party defendants Viren Maniar and Viren Maniar

CPA, LLC (collectively Maniar defendants) summary judgment as to the direct

claims asserted by plaintiff against them.  We affirm.

I.

This case arises from the theft of over $1.7 million by defendant Tamara

Martinez from plaintiff, which occurred over a span of five years while she was

employed as plaintiff's comptroller. In 2019, plaintiff discovered Martinez's fraudulent scheme to steal money from the company. In 2020, plaintiff sued TD Bank, where plaintiff's account from which Martinez unlawfully wrote the checks was maintained, and plaintiff's insurance broker Marc A. Rosenkrantz and his company Schechner Lifson (collectively Schechner defendants) for failing to advise plaintiff to increase or alter their insurance coverage due to the enhanced risk to the company because the comptroller position was now being filled by a non-family member.

In November 2021, Schechner defendants filed a third-party complaint against Maniar defendants alleging claims for indemnification and contribution. On April 28, 2022, Schechner defendants filed an affidavit of merit in relation to their claims against Maniar defendants—plaintiff's accountant and tax preparer. Bruce Foster, CPA certified that "there is a reasonable probability that the care, skill or knowledge exercised or exhibited by [Maniar defendants] in the work that is the subject of the [t]hird-[p]arty [c]omplaint fell outside professional accounting standards."

Plaintiff retained Maniar defendants to perform accounting services, including tax preparation for the tax years of 2013 through 2017. Each year, Maniar defendants sent plaintiff an engagement letter outlining the terms of their

3

services and obligations. Plaintiff alleges that Maniar defendants had "both contractual and professional obligations to alert [plaintiff] to the existence of fraud that might be occurring in connection with [plaintiff's] financial affairs."

In October 2023, the parties attended mediation to no avail. Following mediation, plaintiff sought and was granted leave to file an amended complaint, asserting direct claims against Maniar defendants. On February 2, 2024, plaintiff filed its amended complaint, alleging claims for breach of contract, accountant malpractice, and breach of fiduciary duty against Maniar defendants.

On April 18, 2024, the trial court conducted oral argument on Maniar defendants' summary judgment motion and reserved decision. On May 16, the trial court issued a comprehensive written decision, granting partial summary judgment to Maniar defendants, and finding that plaintiff's claims were untimely under the contractual limitation period in the engagement letters. An order memorializing its May 16, 2024 decision was entered on April 25, 2025.[2]

---

[2] The record reflects that the trial court did not issue an order accompanying its May 16, 2024 written opinion. The court corrected this error by issuing the April 25, 2025 order.

Plaintiff subsequently settled with Schechner defendants and TD Bank and obtained a default judgment against Martinez.

On appeal, plaintiff contends the trial court erred in granting summary judgment because genuine issues of material fact exist as to its claims against Maniar defendants, and the one-year limitation period in the agreement between plaintiff and Maniar defendants did not bar plaintiff's claims.

## II.

### A.

We begin our analysis by reviewing well-established legal principles. We review a trial court's summary judgment decision de novo. DeSimone v. Springpoint Senior Living, Inc., 256 N.J. 172, 180 (2024). Applying the same standard as the trial court, we consider "whether the competent evidential materials presented, when viewed in the light most favorable to the non-moving party, are sufficient to permit a rational factfinder to resolve the alleged disputed issue in favor of the non-moving party." Brill v. Guardian Life Ins. Co. of Am., 142 N.J. 520, 540 (1995). "The court's function is not 'to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial.'" Rios v. Meda Pharm., Inc., 247 N.J. 1, 13 (2021) (quoting Brill, 142 N.J. at 540). No "special deference" is accorded to "the trial court's

5

interpretation of the law and the legal consequences that flow from established facts." Cherokee LCP Land, LLC v. City of Linden Plan. Bd., 234 N.J. 403, 414-15 (2018) (quoting Manalapan Realty, L.P. v. Twp. Comm. of Manalapan, 140 N.J. 366, 378 (1995)).

"[O]nce the moving party presents sufficient evidence in support of the motion, the opposing party must 'demonstrate by competent evidential material that a genuine issue of fact exists[.]'" Globe Motor Co. v. Igdalev, 225 N.J. 469, 479-80 (2016) (alteration in original) (quoting Robbins v. Jersey City, 23 N.J. 229, 241 (1957)). "[W]hen the evidence 'is so one-sided that one party must prevail as a matter of law,' Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252 (1986), the trial court should not hesitate to grant summary judgment." Brill, 142 N.J. at 540.

A "fundamental proposition" of contract interpretation is that "contracts will be enforced as written." Lucier v. Williams, 366 N.J. Super. 485, 491 (App. Div. 2004) (citing Vasquez v. Glassboro Serv. Ass'n, 83 N.J. 86 (1980)). Courts generally "enforce contracts 'based on the intent of the parties, the express terms of the contract, surrounding circumstances and the underlying purpose of the contract.'" Extech Bldg. Materials, Inc. v. E&N Constr. Inc., 262 N.J. 271, 280 (2025) (quoting Manahawkin Convalescent v. O'Neill, 217 N.J. 99, 118 (2014)).

"The plain language of the contract is the cornerstone of [a court's] interpretive inquiry," ibid. (alteration in original) (quoting Barila v. Bd. of Educ. of Cliffside Park, 241 N.J. 595, 616 (2020)) (internal quotation marks omitted), and "unambiguous contracts will be enforced as written unless they are illegal or otherwise violate public policy." Ibid. (quoting Manahawkin Convalescent, 217 N.J. at 118) (internal quotation marks omitted). "[C]ourts will not rewrite contracts to favor a party, for the purpose of giving that party a better bargain." Lucier, 366 N.J. Super. at 491 (citing Kampf v. Franklin Life Ins. Co., 33 N.J. 36 (1960)).

Applying these governing principles, we turn to plaintiff's contentions. We note that the trial court agreed with plaintiff's contention there are genuine issues of material fact that would generally render summary judgment inappropriate. However, the court's decision to grant summary judgment did not rest on whether there were genuine issues of material fact regarding the claims, explaining:

> Based on the plain language of the engagement letters between [] defendants and [] plaintiff and evaluating the facts in the light most favorable to the non-moving party, the court finds that a finder of fact could discern that [] defendants could have breached the terms of the contract, committed professional malpractice, and breached their fiduciary duty sufficient to survive summary judgment.

7

The court went on to address "the question of whether the direct claim[s] against Maniar [defendants were] untimely." The court found, based on the clear and unambiguous language of the agreement, "plaintiff had one year to assert claims against Maniar [defendants] once the cause of action accrue[d]." The court concluded that because there was no genuine issue of material fact as to the one-year time limitation, it granted summary judgment in Maniar defendants' favor on this basis. Therefore, we begin by addressing plaintiff's second contention that the court erred by finding the one-year limitation period in the agreements barred plaintiff's claims against defendants.

B.

Plaintiff asserts two reasons the court erred in concluding that its claims against Maniar defendants were time-barred: (1) the contractual time limitation had not run; and (2) it is unenforceable as against public policy. At the outset, we note that it is undisputed that the agreements between the parties clearly established the following contractual time limitation:

> Any litigation arising out of this engagement, except actions by us to enforce payment of my professional invoices, must be asserted within one year from the date any such cause of action accrues, or within three years from the completion of the engagement, whichever is earlier, notwithstanding any statutory provision to the contrary.

As the trial court aptly noted, "[p]laintiff signed the same engagement letter at least three times." This provision was conspicuously stated and repeated in at least four letters. Thus, plaintiff knowingly agreed to this term.

Generally, "'a cause of action is deemed to accrue when facts exist which authorize one party to maintain an action against another.'" Mullen v. Ippolito Corp., 428 N.J. Super. 85, 105 (App. Div. 2012) (quoting Marini v. Borough of Wanaque, 37 N.J. Super. 32, 38 (App. Div. 1955)). In this case, although plaintiff initially discovered fraud in March 2019 and filed its complaint in July 2020, it admits that it did not become aware of potential claims against Maniar defendants until 2022 after the filing of the affidavit of merit. Indeed, plaintiff acknowledges "it was not until the filing of an [a]ffidavit of [m]erit on April 28, 2022[,] by [Schechner defendants] that it can fairly be said that [plaintiff] was on notice of potential malpractice on the part of [] Maniar defendants."

Giving plaintiff the benefit of this accrual date based on its own admission and evaluating the facts in the light most favorable to the non-moving party, plaintiff had until April 28, 2023, to file its complaint against Maniar defendants. However, plaintiff filed its motion to amend its complaint on October 18, 2023—six months after the one-year deadline in which to assert its

claims against Maniar defendants.  Furthermore, plaintiff did not file its amended complaint until February 2, 2024.

The trial court also rejected plaintiff's assertion that the one-year time limitation began only after mediation failed.  In other words, plaintiff contends that "any litigation against Maniar defendants" could not be commenced until the parties submitted to mediation on October 14, 2023.  In support of this contention, plaintiff relies upon the following provision in the engagement letters:

> You agree that any dispute other than our efforts to collect an outstanding invoice that may arise regarding the meaning, performance or enforcement of this engagement or any prior engagement that I have performed for you, will, prior to resorting to litigation, be submitted to mediation, and that the parties will engage in the mediation process in good faith once a written request to mediate has been given by any party to the engagement.
>
> [(Emphasis added).]

We reject this contention.  First, as the trial court correctly noted, plaintiff cites to "no case law to support [its] proposition that a cause of action does not accrue until mediation occurs."  Next, there is nothing in the plain language of the agreement to support the notion that the time limitation provision is tolled by the mediation clause.  These are two separate and distinct provisions in the

parties' agreement and are not mutually exclusive. Even assuming arguendo that the time to institute legal proceedings did not begin to run until the parties attended mediation, plaintiff offers no explanation as to why mediation could not have occurred within one year of the filing of the affidavit of merit and before the filing of the motion to amend its complaint.

C.

Plaintiff next argues that time limitation in the agreement should have been rejected as against public policy because it improperly imposes on a client a duty to "quickly uncover professional malpractice related to the very services for which the professional was retained." Plaintiff further asserts that the "clause at issue was not conspicuously displayed" and "there [was] no clarity as to how it would be applied."

For the reasons explained in the previous section, the provision at issue was not only conspicuous, it was also repeated in several engagement letters—all of which were signed by plaintiff acknowledging the express terms of the agreement.

Moreover, the parties were free to negotiate and contract to the specific terms in the agreements. "Our case law underscores New Jersey's strong public policy in favor of the freedom to contract . . . limited in those circumstances

11

where a contract would otherwise violate public policy . . . ."  Boyle v. Huff, 257 N.J. 468, 483 (2024) (citations omitted).  Courts do not rewrite contracts to make "a better contract for the parties than they themselves have seen fit to enter into, or to alter it for the benefit of one party and to the detriment of the other."  City of Orange Twp. v. Empire Mortg. Servs., Inc., 341 N.J. Super. 216, 224 (App. Div. 2001) (citations omitted) (citing Karl's Sales and Service, Inc. v. Gimbel Bros, Inc., 249 N.J. Super. 487, 493 (App. Div. 1991)).

Importantly, moreover, it is well-settled that parties may agree to "'a contractual stipulation limiting the time for bringing an action upon a contract to a period less than that prescribed by the foregoing statute . . . if the stipulated period is reasonable and does not violate public policy.'"  Eagle Fire Prot. Corp. v. First Indem. of Am. Ins. Co., 145 N.J. 345, 355 (1996) (quoting A.J. Tenwoods Associates v. Orange Senior Citizens Housing Co., 200 N.J. Super 515, 524-25 (App. Div. 1985) (holding a one-year statute of limitation period in a construction contract which was five years shorter than the statutorily prescribed statute of limitations to be valid)).  In the present case, the parties knowingly and voluntarily agreed to shorten the time frame in which to bring an action arising from the Maniar defendants' professional services.  Under these

circumstances, as the trial court found, there is nothing in the record to support the claim that this provision violates public policy or is unreasonable.

Based on our de novo review, after evaluating the evidence in a light most favorable to plaintiff, summary judgment is appropriate because plaintiff failed to assert claims against Maniar defendants until after the contracted one-year time limitation had expired.

Because the court did not rest its decision to grant summary judgment on whether genuine issues of material fact existed as to plaintiff's claims against Maniar defendants, we need not address this contention. Moreover, to the extent we have not addressed any of plaintiff's remaining arguments, those arguments lack sufficient merit to warrant discussion in a written opinion. R. 2:11-3(e)(1)(E).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

M.C. Harley

Clerk of the Appellate Division